| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> Caption in compliance with D.N.J. LBR 9004-2(c) |
| **GENOVA BURNS LLC** <br> Daniel M. Stolz, Esq. <br> R. Edward Stone, III, Esq. <br> Tel: (973) 533-0777 <br> Fax: (973) 814-4045 <br> dstolz@genovaburns.com <br> rstone@genovaburns.com <br> 110 Allen Road, Suite 304 <br> Basking Ridge, NJ 07920 <br><br> and- <br><br> **WH BURKLEY, LLP** <br> Kirk B. Burkley, Esq. <br> Mason S. Shelton, Esq. <br> 601 Grant Street, 9th Floor <br> Pittsburgh, PA 15219 <br> (412) 456-810 Telephone <br> (412) 456-8135 Facsimile <br> kburkley@bernsteinlaw.com <br> mshelton@bernsteinlaw.com <br><br> *Counsel for Murray Avenue Market* |

| | |
|---|---|
| In re: <br><br> **LAKEHURST AND BROADWAY CORPORATION,** <br><br>          Wind-Down Debtors. | Chapter 11 <br><br> Case No.: 25-14831 (MBK) <br><br> Honorable Michael B. Kaplan |

**OBJECTION OF MURRAY AVE MARKET, LLC TO THE MOTION TO VACATE ORDER APPROVING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE PURSUANT TO FED. R. CIV. P. 60(b) AND FED. R. BANKR. P. 9024**

Murray Ave Market, LLC ("Market" or "Respondent"), by and through its undersigned counsel, hereby files this Objection to the *Motion to Vacate Order Approving Assumption and Assignment of Unexpired Lease Pursuant to Fed. R. Civ. P. 60(B) and Fed. R. Bankr. P. 9024* (the "Objection") filed by 29 Katz Crew, LP (the "29 Katz Crew" or "Movant"). In support thereof, Market states as follows:

1

**INTRODUCTION**

1. Movant, a sophisticated real estate purchaser who acquired the real property located at 1700-1710 Murray Avenue and 1712-1714 Murray Avenue, Pittsburgh, Pennsylvania 15217 (the "Property") with full knowledge of the existing prepetition lease agreement dated August 19, 2023 situated at the Property (the "Lease") and this Court's order approving the assumption and assignment of the Lease to the Market (the "Assignment Order"), now attempts to use so-called after-acquired information to collaterally attack the final order for "alleged" misrepresentations.

2. In other words, the Motion is a thinly veiled attempt by a new landlord to undo a lease it now regrets inheriting so that it can evict its tenant.

3. Movant does not fear Market's failure — it fears Market's success. The extraordinary relief sought herein is an attempt to destabilize a viable tenant, not to correct any fraud upon the Court.

4. The Motion relies on hearsay declarations from a third party ("Murray Avenue Kosher, Inc." or "MAKI"), either a potential seller to Market or a direct competitor of Market. In either scenario MAKI has a financial incentive to leverage the Market.

5. Moreover, the Motion represents an attempt by a landlord, 29 Katz Crew, to egregiously overstep its alleged desire to protect its existing lease rights by meddling and involving itself in negotiations between Market and MAKI.

6. At all relevant times, Market actively negotiated with MAKI in good faith for the purpose of consummating an acquisition of MAKI.

7. Beyond apprising MAKI of the Lease assumption proceedings throughout, Market conducted negotiations with MAKI openly, transparently, and continuously for the purpose of

maintaining goodwill and stability within a community that would be served by a viable and essential kosher food market in a space that was otherwise vacated and abandoned by the Debtors.

8. Furthermore, the timing of Movant bringing the Motion is similarly transparent, albeit for impermissible purposes that should be apparent to this Honorable Court.

9. Subsequent to Movant wrongfully inserting itself in Market and MAKI's negotiations, MAKI immediately shifted its position and began to rebuff Market's continued attempts to finalize the contemplated transaction. The communications between the parties make that abundantly clear.

10. Movant's actions represent tortious and intentional interference with Market's prospective contractual relations, which is a cognizable cause of action under Pennsylvania law.

11. The Motion fails to (1) establish the "alleged" fraud or misrepresentation by clear and convincing evidence and (2) acknowledge that Market independently provided adequate assurance of future performance notwithstanding its proposed acquisition of MAKI.

12. In fact, the indisputable evidence demonstrates that (1) Market was forthcoming about its intentions with this Court; (2) Market's witness testimony has been consistent at all times before, during, and after the Court entered the Assignment Order; (3) Market provided the adequate assurance of future performance under the Lease; and (4) Market continues to perform under the Lease including, *inter alia*, paying all rent as due it becomes due and owing.

13. The Motion represents an impermissible attack on a final order by a party who lacks standing, is barred by collateral estoppel, and seeks relief that this Court lacks jurisdiction to grant.

14. Moreover, Movant, by filing this Motion, seeks to interfere with and prejudice the negotiations between Market and MAKI in violation of the Assignment Order.

15. The Assignment Order provided, inter alia, that (1) Market is an appropriate assignee of the Lease, and (2) Market satisfied all statutory requirements for assuming the Lease.

16. By filing the Motion, Movant seeks to undermine and disturb the finality of the Assignment Order for its own economic gain.

17. Lastly, post-plan confirmation, this Court's jurisdiction has narrowed considerably, and the relief sought would disrupt a confirmed plan that is integral to the final administration of these bankruptcy estates.

## FACTUAL AND PROCEDURAL BACKGROUND

18. Market incorporates by reference the procedural history set forth in the Motion but emphasizes that this Court already conducted a thorough review of the facts through an evidentiary inquiry that included multiple hearings and proffers before entering the Assignment Order on September 28, 2025.

19. 1700 Murray Avenue, LLC ("1700 Murray") was the owner the Property located at 1700-1710 Murray Avenue and 1712-1714 Murray Avenue, Pittsburgh, Pennsylvania 15217.

20. The Debtor, Rite Aid of Pennsylvania, Inc. ("Rite Aid") leased the Property at location Rite Aid Store No. 274.

21. The Property secured a Note in favor of AmeriServ Financial Bank ("AmeriServ") in the original principal amount of $10,080,000.00 (the "Note"), as evidenced by a Mortgage which was recorded with the Recorder of Deeds of Allegheny County, Pennsylvania on May 20, 2019, at Mortgage Book 50552 Page 477 (the "Mortgage").

22. After 1700 Murray defaulted on its obligations under the Note and Mortgage, AmeriServe commenced a foreclosure action against 1700 Murray in the Court of Common Pleas of Allegheny County, Pennsylvania on June 15, 2024.

23.     The Court of Common Pleas of Allegheny County, Pennsylvania appointed Martin Perry, on behalf of Michael Ella RES, as the Court-appointed receiver (the "Receiver") over 1700 Murray by Order dated January 29, 2025 (the "Receivership Order").

24.     On July 22, 2025, the New Rite Aid Debtors designated the Lease for intended assumption and assignment by identifying Market as the successful bidder/assignee (the "Notice"). *See* Doc. No. 1525, Bankruptcy Case No. 25-14861-MBK.

25.     On August 5, 2025, AmeriServ filed an objection to the Notice arguing that Market could not provide adequate assurance of future performance under the terms of the Lease. *See* Doc. No. 1805, Bankruptcy Case No. 25-14861-MBK.

26.     On August 28, 2025, in response to AmeriServ's objection, Market filed its declaration of Yitzchok Glassner in support of the Lease assumption and assignment along with its market business plan (the "Declaration"). *See* Doc. No. 2194 & 2194-1, Bankruptcy Case No. 25-14861-MBK.

27.     Notably, the Declaration described Market's "inten[tion] to acquire [MAKI] and convert the vacant space located at [the Property] into space usable as a specialty upscale kosher food market." *See* Doc. Nos. 2194 at ¶ 5, Bankruptcy Case No. 25-14861-MBK.

28.     Throughout and at all relevant times during the New Rite Aid Bankruptcy Case proceedings, Market stated that it *intended* to pursue such an acquisition and relocation of MAKI.

29.     On September 18, 2025, this Honorable Court overruled AmeriServ's objections to the proposed assumption and assignment of the Lease. *See* Doc. Nos. 2494, Bankruptcy Case No. 25-14861-MBK.

30.     Notably, the Assignment Order was not conditioned on Market ultimately closing on its purchase of MAKI. *See generally* Doc. Nos. 2494, Bankruptcy Case No. 25-14861-MBK.

31. In or around October 2025, AmeriServ alleges that it received information indicating that, in the process of providing financial information to this Honorable Court, Market utilized the tax returns, profit and loss statement, and other financial documents of MAKI. *See Exhibit A, ¶ 25 of Joint Motion of Receiver and AmeriServ for Order of Court Approving Amended Sale Agreement*, GD-24-003188 in the Court of Common Pleas of Allegheny County, Pennsylvania.

32. Upon information and belief, this described exchange of information was actually the concerted effort of AmeriServ and 29 Katz Crew to contact MAKI and attempt to interfere with and block the sale of MAKI to Market.

33. Curiously, immediately after AmeriServ and 29 Katz Crew spoke with representatives of MAKI, MAKI cut off all negotiations with Market.

34. At all relevant times, AmeriServ and 29 Katz Crew knew, or should have known, that Market was in the process of consummating a transaction for the sale of MAKI.

35. As such, Market believes that it now holds claims against AmeriServ and 29 Katz Crew for intentional interference with prospective contractual relations and civil conspiracy along with violations of relevant nondisclosure agreements (the "Claims") under Pennsylvania law.

36. Market is a duly formed limited liability company with a viable business plan.

37. Market's principal, Yitzchok Glassner, in addition to his written testimony attesting to Market's ability to perform under the Lease, offered a one (1) year personal guaranty of the lease as added security.

38. Additionally, Market provided financial projections and evidence of its ability to perform under the Lease.

39. Any discussions including, but not limited to, negotiations between Market and MAKI were preliminary and protected by a non-disclosure agreement dated June 11, 2025 (the "NDA").

40. At all relevant times, Market acted in good faith in its negotiations and did not violate the NDA by using financial information for the purpose of evaluating the business opportunity.

41. Moreover, at all relevant times, Market has made timely monthly rent payments, and, as of the date of this Objection, is not in default under the terms of the Lease. Both 29 Katz Crew, and AmeriServ before it, have accepted Market's lease payments.

## ARGUMENT

### A. Movant Lacks Standing to Bring this Motion.

42. Movant fails to even address whether it maintains standing to bring this Motion.

43. Notably, Movant was not a party to the Lease assumption proceedings.

44. In fact, Movant subsequently closed its purchase of the Property months after the Court's entry of the Assumption Order and with full knowledge that the Assumption Order existed.

45. In other words, Movant acquired only the rights that its predecessors possessed at the time of the Assignment Order.

46. Those predecessors, AmeriServ and the Receiver, had a full and fair opportunity to object to the lease assumption, litigated the issue, and subsequently lost.

47. A successor-in-interest is bound by prior judgments affecting the Property and cannot relitigate issues that were or could have been raised by its predecessors.

48. Furthermore, the Motion relies on alleged injuries to MAKI, a non-party and stranger to the Lease assumption proceedings, not to the Movant.

49. Any claim regarding breach of the NDA belongs exclusively to MAKI, not to 29 Katz Crew, and has no impact or relevancy to these proceedings.

50. Moreover, the Third Circuit has limited bankruptcy standing to aggrieved persons whose pecuniary interests are directly and adversely affected by the order at issue. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004).

51. In other words, participation and standing in bankruptcy proceedings is narrowed to those with a direct financial stake in the outcome and promotes the efficient administration of the estate.

52. By contrast, Movant, a non-party to the Lease assumption proceedings, maintains no pecuniary interest that is directly and adversely affected by the Assignment Order.

    **B.    The Movant is Collaterally Estopped from Re-litigating Issues Finally Determined by this Court.**

53. To the extent the baseless assertions levied in the Motion were not actually litigated, they could have been.

54. Collateral estoppel, otherwise known as issue preclusion, bars the re-litigation of issues that have been previously determined in a final judgment by a court of competent jurisdiction, provided that the party against who it is asserted, or those in privity with that party, had a full and fair opportunity to litigate the issue.

55. Under the doctrine of collateral estoppel, a claim will be barred if four elements are met:

> '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' *Burlington Northern Railroad v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).

8

*Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007).

56. Prior to entry of the Assignment Order, the uncontroverted evidence presented by the Declarations demonstrated that Market *intended* to acquire MAKI.

57. Moreover, at all relevant times, Market steadfastly made clear that its ultimate intention would be to open a kosher market at the Property.

58. Despite having the opportunity to examine Mr. Glassner and inquire further into the status of the negotiations, in spite of the Declarations making clear that no final agreement to acquire MAKI had yet been reached, Movant, AmeriServ, and the Receiver never raised the issue.

59. Instead, subsequent to the entry of the Assignment Order, Movant, AmeriServ, and the Receiver moved forward with closing on the sale of the Property in December of 2025.

60. The Court made extensive findings of fact and conclusions of law in the Assignment Order which finally and fully adjudicated, and negated, the assertions Movant now seeks to resurrect through the Motion. AmeriServ did not file an appeal.

61. It is undisputed that the Assignment Order is a final, non-appealable order.

62. Finally, the determination that Market intended to proceed with acquiring MAKI was essential to entry of the Assignment Order.

    **C.    Re-litigating the Assignment Order is Barred by the Doctrine of Res Judicata.**

63. The Third Circuit has held that "[r]es judicata bars re-litigation of a claim if 'there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies.'" *In re Montgomery Ward, LLC*, 634 F.3d 732, 736-37 (3d Cir. 2011) (citing *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)); *see also In re Aquilino*, 135 F.4th 119, 132 n.11 (3d Cir. 2025) (noting that "the normal rules of res judicata . . . apply to the decisions of bankruptcy courts" (cleaned up)).

64. Accordingly, no party may "relitigat[e] issues that were or could have been raised in" an action resulting in "a final judgment on the merits of the action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).

65. The Supreme Court has clarified that res judicata may apply to a successor in interest, despite the general rule against nonparty preclusion. *Id.* (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

66. In *Taylor*, the Supreme Court identified five exceptions to the general rule against non-party preclusion:

> (1) where the nonparty agrees to be bound by a prior judicial determination between other parties, (2) where the nonparty was adequately represented in the prior litigation by someone with the same interests, (3) where the nonparty assumed control of the prior litigation, (4) where the nonparty is the proxy or agent of a party to the prior litigation, and (5) where a special statutory scheme, such as bankruptcy, expressly forecloses subsequent litigation.

*Id.* at n. 5 (citing Taylor, 553 U.S. at 893-96).

67. Here, Movant was adequately represented by its predecessors AmeriServ and the Receiver, both of which maintained the same interests as 29 Katz Crew.

68. Movant, and its predecessors AmeriServ and the Receiver, were given proper and timely notice of proposed assumption and assignment of the Lease. Not only did they have an opportunity to participate in the Lease assumption proceedings, but AmeriServ and the Receiver also actually and actively participated.

69. The Third Circuit has stated that it

> [T]ake[s] a "broad view" of what constitutes the same cause of action. *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984).; *see also* Restatement (Second) of Judgments § 24(1) ("[A] claim extinguished [by the doctrine of claim preclusion] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the

> transaction . . . out of which the action arose."). "Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims . . . ." *Athlone*, 746 F.2d at 983-84 (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982) (en banc)) (emphasis in *Athlone* omitted). Multiple factors guide our analysis under the essential similarity test: "(1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . . ; and (4) whether the material facts alleged are the same." *Id.* at 984 (internal citations omitted). It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions. *Id.*

*Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010).

70. For the purposes of res judicata, the arguments and claims Movant is now seeking to resurrect in the Motion arise from the same "cause of action" applicable to Assignment Order.

71. Indeed, Movant's predecessors, AmeriServ and the Receiver, had the opportunity to raise the very same issues and arguments in their objections and other filings in advance of the hearing regarding the Lease assumption and assignment.

### D. The Relief Sought is Moot Due to Confirmation of a Plan of Liquidation.

72. Since the entry of the Assignment Order, this Court has confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC, and Its Debtor Affiliates* (the "Plan") in these bankruptcy cases. *See* Doc. Nos. 3215 & 3536, Case No. 25-14861.

73. On December 31, 2025, the Plan became effective. *See* Doc. No. 3699, Case No. 25-14861.

74. The doctrine of mootness precludes this Court from granting the requested relief.

75. The Third Circuit has held that application of the doctrine of equitable mootness follows a two-prong inquiry: "(1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation."

11

*Tribune Media Co. v. Aurelius Capital Mgmt., L.P.*, 799 F.3d 272, 278 (3d Cir. 2015) (citing *Samson Energy Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 728 F.3d 314, 321 (3d Cir. 2013)).

76. Here, the Court has confirmed the Plan, which has resulted in the establishment of a liquidating trust, and whereby the funds Market paid to acquire the Lease have been spent.

77. No appeal of the Assignment Order, much less a stay pending appeal, has been sought or granted.

78. Moreover, Market, a non-debtor third party, has relied on the finality of the Assignment Order by, *inter alia*, (1) paying rent pursuant to the terms of the Lease, (2) applying for zoning variances and permits, (3) maintaining the Property, and (4) obtaining a loan for a substantial buildout of the leased space at the Property.

79. Granting the requested relief would be substantially and unfairly prejudicial to the interests of Market.

    **E.    No Post-Plan Confirmation Jurisdiction Exists to Adjudicate the Motion and Provide the Relief Requested.**

80. Under Third Circuit law, confirmation of a plan fundamentally alters the bankruptcy court's jurisdiction.

81. In fact, jurisdiction to adjudicate the Motion only exists if there is a close nexus between the relief sought and the objectives of the plan of liquidation.

82. The Third Circuit has held that "a bankruptcy court may still have jurisdiction over the claim if the claim is 'related to a case under title 11,' *i.e.* the Bankruptcy Code." *Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 405 (3d Cir. 2009) (citing 28 U.S.C. § 157(c)(1)).

83. Although "related to" jurisdiction over non-core matters shrinks after confirmation of a chapter 11 plan, a bankruptcy court retains jurisdiction over claims having a "*close nexus* to

12

the bankruptcy plan or proceeding." *See e.g., Penson Techs. LLC v. Schonfeld Grp. Holdings LLC (In re Penson Worldwide, Inc.)*, 587 B.R. 6, 12 (Bankr. D. Del. 2018) ("Post-confirmation, however, bankruptcy jurisdiction over non-core proceedings narrow; it exists only if there is a 'a close nexus to the bankruptcy plan or proceeding.'").

84. In determining whether post-confirmation "related to" jurisdiction exists, the essential inquiry is "whether there is a close nexus to the plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, In*c.), 372 F.3d 154, 166-67 (3d Cir. 2004).

85. A "close nexus" exists "when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *Id.* at 168-69.

86. Here, the Motion is predicated on "alleged" fraud by a non-debtor (Market) against a non-debtor (MAKI).

87. The dispute underpinning the Motion is centered between two non-debtors (Market and 29 Katz Crew).

88. The Debtor, Lakehurst and Broadway Corporation, is a wind-down debtor with no continuing interest in the outcome and disposition of the Motion.

89. With respect to plan implementation, granting the Motion and vacating the Assignment Order fails to further the objective of the confirmed plan of liquidation.

90. In fact, granting the Motion would disrupt a pre-confirmation transaction that provides no benefit to these bankruptcy estates.

### F. The Motion Fails to Meet the High Burden Under Rule 60(b)(3)

91. Relief under Rule 60(b)(3) requires a showing of clear and convincing evidence of fraud, misrepresentation, or misconduct that prevented the moving party from fully and fairly

presenting its case. *Boldrini v. Wilson*, 609 F. App'x 721 (3d Cir. 2015) (citing Brown v. Pennsylvania R. Co., 282 F.2d 522, 527 (3d Cir. 1960) for the proposition that "[a] court may vacate a judgment under Rule 60(b)(3) only if a party establishes, by clear and convincing evidence, that the judgment was obtained through such fraud that 'prevented [him] from fully and fairly presenting his case,' *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).").

92. The alleged misrepresentations, that Market was acquiring MAKI or that a merger was contemplated, were statements of future intent amidst continuing negotiation and were not material misrepresentations of existing fact.

93. Negotiations were ongoing at the time of the filing of the pleadings throughout the Lease assumption proceedings – and Movant and its predecessor knew that.

94. The fact that a deal ultimately was not reached does not retroactively render the statements fraudulent.

95. Moreover, the prior objectors to the Lease assumption, AmeriServ and the Receiver, had a full and fair opportunity to test and challenge Market's evidence. They were well aware, in fact Market's own statements put them on notice, that the transaction had not yet closed.

96. AmeriServ and the Receiver reviewed documents, exchanged information with Market, and had an opportunity to cross-examine a witness for Market in open court.

97. In fact, AmeriServ and the Receiver asserted their own objection and supplemental objection to the Lease assumption.

98. Ultimately, the Court conducted its own review and found Market's showing to be sufficient and entered the Assignment Order.

### E. The Motion Fails Under Rule 60(b)(2) for Newly Discovered Evidence.

99. To prevail under Rule 60(b)(2), the movant must show evidence that newly discovered evidence (1) is material and not cumulative; (2) could not have been discovered earlier with reasonable diligence; and (3) would likely change the outcome. *Roberts v. PNC Bank (In re Roberts)*, 2025 LEXIS 2748 at *14 (citing *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) "Under Rule 60(b)(2), the term 'newly discovered evidence' refers to 'evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.' *Id*. A party is entitled to new trial only if such evidence is (1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." (citation omitted)).

100. First, Movant fails to satisfy, *inter alia*, the reasonable diligence prong in its Motion. In spite of Movant's predecessor, the prior objectors, knowing the identities of MAKI's principals, the prior objectors made no attempt or inquiry to MAKI to determine the status of negotiations with the Market.

101. Moreover, Market's witness was available for cross-examination. Movant's predecessor knew that the deal to acquire MAKI had not yet closed and failed to offer any evidence or cross-examine Market regarding those facts. Those facts were not hidden, Movant's predecessor just failed to put them at issue.

102. Second, the "new" information discovered by Movant is not new at all. Market's representations at all relevant times during the Lease assumption proceedings remained consistent—negotiations remained ongoing between Market and MAKI to effectuate an acquisition. Subsequent to the Assignment Order, Market and MAKI remained in active

15

negotiation with Market maintaining its intent to acquire MAKI. Nevertheless, Market did not change its position on pursuing the acquisition of MAKI; MAKI is the party that changed its mind.

103. Lastly, the "new" evidence would not change the outcome. The information known today is identical to the averments in Market's Declarations—Market intended to acquire MAKI. Market never represented that MAKI and Market reached a binding agreement. Market's proposed business plan and the acquisition of MAKI were merely a single consideration to Market's overall objective in assuming the Lease. Market did not solely base its demonstration of adequate assurance on the intended acquisition of MAKI. As stated previously, Market presented its own business plan, financial projections, and offered a personal guaranty to secure the Court's approval of the Leases.

    **F.    The Motion is Untimely and Prejudicial.**

104. Rule 60(c)(1) requires that motions under Rule 60(b) be made within a "reasonable time."

105. The Assignment Order was entered on September 28, 2025.

106. Movant closed on its purchase of the Property on December 5, 2025.

107. This Motion was filed on February 13, 2026, five months after the entry of the Assignment Order and two months after the Movant acquired the Property that is subject to the Lease.

108. This delay is unreasonable, especially given that Movant could have conducted due diligence prior to closing, and make a decision as to whether it wanted to be bound by the terms of the Lease.

109. Market has relied on the Assignment Order to its detriment, incurring, *inter alia*, substantial expenses in preparation to open its business.

110. Vacating the Assignment Order at this juncture would cause severe prejudice to Market and inject uncertainty into this bankruptcy case that is already on the path of winding down these debtors through a liquidation.

## CONCLUSION

111. For the foregoing, Murray Ave Market, LLC respectfully requests that this Court deny the *Motion to Vacate Order Approving Assumption and Assignment of Unexpired Lease Pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024* in its entirety and grant such other and further relief as the Court deems just and proper.

Date:  March 2, 2026

Respectfully Submitted,

By:     /s/ Daniel M. Stolz
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
R. Edward Stone, III, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Fax:          (973) 533-1112
Email:      DStolz@genovaburns.com
                Rstone@genovaburns.com
*Local Counsel for Murray Ave Market, LLC*


By:     /s/ Kirk B. Burkley
**WH BURKLEY, LLP**
Kirk B. Burkley, Esq., (*pro hac pending*)
Mason S. Shelton, Esq. (*pro hac pending*)
601 Grant Street, 9th Floor
Pittsburgh, PA 15219-1900
Telephone:    (412) 456-8163
Facsimile:    (412) 456-8135
Email:         kburkley@bernsteinlaw.com
                 mshelton@bernsteinlaw.com
*Attorneys for Murray Ave Market, LLC*