| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**Donald F. Campbell, Jr., Esq. (DC8924)**<br>Giordano, Halleran & Ciesla, P.C.<br>125 Half Mile Road, Suite 300<br>Red Bank, New Jersey 07701<br>Tel: (732) 741 3900<br>Fax: (732) 224 6599<br>dcampbell@ghclaw.com<br><br>Counsel for WellDyneRx, LLC | |
| In Re:<br><br>    LAKEHURST AND BROADWAY CORPORATION,<br><br><br><br>                                    Debtor. | Case No: 25-14831 (MBK)<br><br>Chapter: 11<br><br>Hearing Date: April 23, 2026 at 1:00 p.m.<br><br>Judge:  Michael B. Kaplan, U.S.B.J. |

**OPPOSITION TO MOTION BY THE LIQUIDATING TRUSTEE TO ENFORCE THE CHAPTER 11 PLAN AND CONFIRMATION ORDER**

WellDyneRx, LLC ("WellDyne"), interested party in the above-captioned bankruptcy case, by and through its attorneys, Giordano Halleran & Ciesla, P.C., opposes the Liquidating Trustee's (the "Trustee") Motion to Enforce the Chapter 11 Plan and Confirmation Order (the "Motion") [Docket No. 291] and states as follows:

**I.        Preliminary Statement**

This Motion is an improper attempt to circumvent the parties' binding contractual agreement. Pursuant to the underlying agreement, the parties agreed to a valid and enforceable arbitration provision. Specifically, Movant is attempting to reclassify a straightforward breach of contract dispute as a purported violation of the confirmed plan and confirmation order.

Movant now seeks to obtain relief from this Court that directly conflicts with the express

1

#12121378v1

terms of the governing contract. In doing so, Movant asks this Court to effectively rewrite the parties' agreement and ignore well-established federal policy favoring enforcement of arbitration provisions. This Court should prohibit any improper attempt to bypass the arbitration provision.

## II. Relevant Background Information.

1. On or about January 1, 2025, WellDyne and the Debtor (hereafter collectively referred to as the "Parties") entered into a Pharmacy Network Participation Agreement (the "Agreement").

2. On or about April 1, 2025, the Parties entered into a Discount Card Agreement.

3. WellDyne concedes that the Agreement included reporting obligations in which WellDyne was required to provide performance reports.

4. The Agreement also included a broad arbitration provision covering disputes arising under the Agreement in which disputes were to be resolved through arbitration in Tampa, Florida. The Arbitration provision is set forth in full below:

> Arbitration. Any dispute arising out of or relating to this Agreement or the subject matter of this Agreement, or any breach of this Agreement, including any dispute regarding the scope of this section, will be resolved through arbitration administered by the American Health Lawyers Association Dispute Resolution Service and conducted pursuant to the AHLA Rules of Procedure for Arbitration. Such arbitration shall take place in Tampa, Florida. Judgment on the award may be entered and enforced in any court having jurisdiction. Notwithstanding any contrary provision in this Agreement, a party may commence a judicial proceeding, without having first complied with the provisions of this section, to seek injunctive or other equitable relief necessary to prevent irreparable harm. This arbitration provision shall survive termination of this Agreement.

5. The Agreement expressly requires that disputes be resolved through arbitration, subject only to limited exceptions not applicable here.

## III. Bankruptcy Procedural Background

6. On May 5, 2025, the Debtor(s) filed a voluntary petition for bankruptcy relief

2

under Chapter 11 of the Bankruptcy Code.

7.      WellDyne was not listed as a creditor.

8.      On September 3, 2025, the Debtor(s) filed a proposed joint plan of reorganization (as subsequently amended, the "Plan").

9.      The Plan sought to reject the Agreement between the Parties.

10.      On November 26, 2025, the Court confirmed the Plan and entered an Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates (the "Confirmation Order") [Docket No. 3445].

11.      WellDyne did not receive notice of the proposed Plan or Confirmation Order.[1]

12.      On or about November 7, 2025, counsel for the Debtor requested WellDyne provide various reconciliation reports.

13.      On December 31, 2025, the Effective Date of the Plan occurred and the Plan was consummated.

14.      On or about February 5, 2026, WellDyne responded that "although the Agreement called for reporting 30 days after the end of each quarter, the actual reconciliation practice between the two parties was significantly different," and that it was "not uncommon for several months to pass before [WellDyne] issu[ed the] reports" as common in the ordinary course of business between the Parties. WellDyne also asserted that any litigation would be subject to the Agreement's binding and enforceable arbitration provisions.

15.      Shortly thereafter, on March 3, 2026, the Liquidating Trustee filed the underlying

---

[1] Upon review of the 12/3/25 Affidavit of Service [Case No. 25-14861; Docket No. 3468] and 1/13/26 Supplemental Affidavit of Service [Case No. 25-14831; Docket No. 26], WellDyne was not listed as a notified party on Schedule A.

3

Motion seeking to enforce certain alleged reporting obligations under the Agreement; but also seeking to strike the binding arbitration agreement under the assumption WellDyne is in breach of the confirmed plan and/or confirmation order.

**IV.     Legal Argument**

16.     There is a strong federal policy in favor of arbitration, as codified in the Federal Arbitration Act ("the FAA"). *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); 9 U.S.C. §§ 3 & 4 (the court shall stay any action which is arbitrable pursuant to a written arbitration agreement and may compel the parties to arbitrate). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses,* 460 U.S. at 24–25, 103 S.Ct. 927.

17.     Courts in the Third Circuit recognize that rejection or breach of an underlying agreement does not extinguish an agreement to arbitrate, and that parties may still be compelled to arbitrate notwithstanding such rejection. *See*, e.g., *Southeastern Pa. Transp. Auth. v. AWS Remediation, Inc.*, 2003 WL 21994811, at *3 (E.D. Pa. Aug. 18, 2003) (holding that arbitration clause survived debtor's rejection of contract); *Societe Nationale Algerienne Pour La Recherche v. Distrigas Corp.*, 80 B.R. 606, 609 (D. Mass. 1987) (holding that arbitration provision is a separate undertaking which survives debtor's rejection of the underlying agreement); *In re Monge Oil Corp.*, 83 B.R. 305, 308 (Bankr. E.D. Pa. 1988) ("Rejection o[f an executory contract] does not make the contract null and void *ab initio*; it simply protects the estate from assuming contractual obligations on a priority, administrative basis… Thus, it may not follow from § 365(g)(1) that a rejection of a contract voids a compulsory arbitration clause.*") In re*

4

*Fleming Companies, Inc.*, 325 B.R. 687, 693 (Bankr. D. Del. 2005).

18.    As explained by the court in *Southeastern Pennsylvania Transportation Authority*:

> The argument that a party's unilateral termination of a contract voids the arbitration clause fails for obvious reasons. To allow a party to avoid arbitration by simply terminating the contract would render arbitration clauses illusory and meaningless.... A party not wishing to arbitrate its alleged breach could simply terminate that contract and avoid any obligation to arbitrate.
>
> Similar rational applies when a debtor rejects a contract. A rejection in bankruptcy does not alter the substantive rights of the parties that formed pre-petition.... While a debtor may reject a contract in its "entirety," it may not invalidate freely negotiated methods of dispute resolution [such as arbitration provisions] as they apply to pre-petition acts.
>
> *Southeastern Pa. Transp. Auth. v. AWS Remediation, Inc.*, 2003
>
> WL 21994811, at *3 (E.D. Pa. Aug. 18, 2003).

19.    Likewise, in *In re Fleming Companies, Inc.*, the United States Bankruptcy Court for the District of Delaware considered a motion by Fleming Companies, Inc. to compel arbitration of claims asserted by Madison Foods, Inc., and to stay those claims not subject to arbitration. 325 B.R. 687, 696 (Bankr. D. Del. 2005). The court held that the arbitration provision contained in the facility standby agreement governed disputes relating to the promissory notes and further determined that the debtor did not waive its right to arbitrate notwithstanding its rejection of the agreement in the bankruptcy proceeding. *Id.*

20.    Accordingly, courts have consistently recognized that rejection or breach of a contract does not invalidate an arbitration clause. Indeed, arbitration is typically invoked precisely because of an alleged breach. Any contrary rule would permit a party to circumvent arbitration at will simply by breaching the agreement.

#12121378v1

21.     Here, Movant's Motion disregards the Agreement's binding arbitration provision as well as the Parties' established course of performance, under which reporting was provided on a different schedule than what is being asserted.

22.     Notably, Movant does not dispute that the arbitration provision is valid and enforceable. Rather, Movant is attempting to avoid arbitration by reframing the dispute as one arising under the Confirmation Order and attempting to invoke this Court's broad equitable powers under §105. This approach must fail.

23.     This dispute is, at its core, a breach of contract dispute concerning reporting obligations and alleged non-compliance with the Agreement. As such, it falls squarely within the scope of the Arbitration provision. Movant cannot now avoid arbitration. If Movant believes it is entitled to relief, the proper forum is arbitration, not Bankruptcy Court.

24.     The Motion effectively asks this Court to disregard the arbitration provision and impose new obligations inconsistent with the Parties' Agreement and course of performance.

25.     Pursuant to §105, bankruptcy courts may not use their equitable powers to rewrite contracts or strip parties of their bargained-for rights. In this instant matter, the Parties never agreed to waive arbitration. Moreover, the Confirmation Order cannot unilaterally eliminate that right.

26.     As it stands, Movant seeks to enforce the accounting provision while disregarding the arbitration provision. However, Movant cannot now pick and choose favorable provisions of the Agreement while ignoring unfavorable provisions, such as the arbitration clause.

27.     Even further, rejection of an executory contract constitutes a breach, it does not eliminate arbitration or create new rights. Such rejection does not rescind the contract or eliminate provisions, such as arbitration clauses, that govern dispute resolution.

6

28.    Therefore, any claims arising from the Agreement remain subject to the binding arbitration provision and Movant cannot now improperly attempt to enforce selective provisions while avoiding others.

29.    Even if Movant could properly assert its claim before this Court, any such claim would be subject to WellDyne's rights, including but not limited to its right to recoupment arising from damages sustained as a result of the Debtor's rejection. As a result, WellDyne reserves all rights, claims and defenses to recoupment.

30.    WellDyne acknowledges that the Debtor is entitled to an accounting and that WellDyne retains the right to enforce the arbitration provision. WellDyne seeks to address and resolve these issues with the Debtor in an orderly manner and opposes the Movant's attempt to circumvent the agreed-upon arbitration requirement.

31.    Accordingly, the Motion should be denied.  WellDyne is hopeful the Trustee can have a continued dialogue to attempt to resolve this issue and avoid wasteful and unnecessary litigation.

## Conclusion

Based on the foregoing, WellDyneRx, LLC respectfully request this Court deny the Liquidating Trustee's Motion.

**GIORDANO, HALLERAN & CIESLA, P.C.**
*Attorneys for* WellDyneRx, LLC
By: /s/ *Donald F. Campbell, Jr.*
Dated: April 6, 2026                      DONALD F. CAMPBELL, JR., ESQ.

7

#12121378v1