**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
David M. Bass, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com

*Counsel to the Liquidating Trustee and the Wind-Down Debtors*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>LAKEHURST AND BROADWAY CORPORATION,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 25-14831 (MBK) |

## LIQUIDATING TRUSTEE'S OBJECTION TO HVP2 LLC'S
## MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

Eric Kaup, the RAD Liquidating Trustee (the "Liquidating Trustee"), on behalf of the RAD

Liquidating Trust (the "Liquidating Trust") and the above-captioned debtor and the other Wind-

Down Debtors (collectively, the "Wind-Down Debtors", and prior to the Effective Date, the

---

[1]   On December 30, 2025, the Court entered the *Order Granting Debtors' Motion for Final Decree Closing Certain of the Chapter 11 Cases in New Rite Aid, LLC, et al.*, closing all cases listed therein except for the above captioned Debtor [Case No. 25-14861 (MBK), Docket No. 3695] (the "Order on Final Decree"). The Court has entered a text order on the affiliated dockets listed in the Order on Final Decree requiring that all remaining matters be filed under the above captioned case, *Lakehurst and Broadway Corporation*, Case No. 25-14831 (MBK). Except as otherwise provided herein, references to the "Docket" herein shall refer to the docket in the formerly jointly administered cases captioned *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK).

"Debtors")[2] in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), files this objection (this "Objection") to the motion of HVP2 LLC [Docket No. 3513] (the "Motion")[3] seeking the payment of postpetition taxes, water charges and attorney's fees, and in response thereto, the Debtors respectfully state as follows:

1.       HVP2 LLC ("HVP2"), a landlord for one of the Debtors' rejected leases, seeks payment of certain alleged administrative costs, including taxes, water charges and attorney's fees. As set forth below, the "Certification" submitted with the Motion is defective and should be rejected by the Court and stricken from the record.  Upon striking such submission from the record, the Court would be left with no support – evidentiary or otherwise – upon which it could grant the Motion.  If the Court is inclined to consider the Motion, notwithstanding the significant defects, HVP2 is not entitled to any portion of its claims pursuant to sections 365(d)(3) or 503(b) of title 11 of the United States Code (the "Bankruptcy Code").

## PROCEDURAL BACKGROUND

2.       On May 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the District of New Jersey (the "Court").  From the Petition Date through the Effective Date (defined below) of the Plan, the Debtors remained in possession of their assets and continued to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates (Technical Modifications)* [Docket No. 3445, Ex. A] (as confirmed, the "Plan").

[3]    HVP2 LLC also filed a motion [Docket No. 3721] seeking payment of certain other asserted administrative expenses.  In accordance with the Order on Final Decree, the Clerk's office entered a note on the docket entry "FILED IN THE INCORRECT CASE. THIS MOTION WILL NOT BE HEARD."  Given that the motion was not appropriately filed and scheduled, the Liquidating Trustee and Wind-Down Debtors have not responded to that motion and reserve all rights with respect to same.

3.      On November 26, 2025, the Court entered its *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3445], and on December 15, 2025, entered its *Supplemental Order to Order Approving The Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3536].

4.      The Plan became effective on December 31, 2025 (the "Effective Date").  *See Notice of (A) Entry of the Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC (Technical Modifications) and Its Debtor Affiliates and (II) Occurrence of the Effective Date* [Docket No. 3699].  On the Effective Date, the Trust was established pursuant to the terms of the Plan and the terms of that certain Liquidating Trust Agreement (the "Trust Agreement") under which the Liquidating Trustee became the sole representative of the Wind-Down Debtors. *See* Plan, Art. VII. and Trust Agreement, Art. II.

**THE LEASE**

5.      Prior to the Petition Date, on or about April 24, 2017, Debtor Eckerd Corporation d/b/a Rite Aid, as tenant entered into a lease with HVP2, as landlord for the premises located at 83 Vandenburgh Avenue, Troy, New York (Store No. 10687) (the "Lease").  A copy of the Lease is attached to the Motion and has been previously filed by the Debtors in connection with other motions filed by HVP2.  *See*, *e.g.*, Docket No. 2391.

6.      On July 25, 2025, pursuant to the *Final Order (I) Authorizing and Approving Procedures to Reject, Assume, or Assume and Assign Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 776] (the "Rejection Procedures Order"), the Debtors filed the *Sixteenth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases*

[Docket No. 1573] (the "Rejection Notice") providing notice of their intent to reject the Lease

effective as of July 31, 2025 (the "Rejection Date").

7.    On August 4, 2025, HVP2 filed its *Objection to the Sixteenth Order Approving the Rejection of Certain Executory Contracts and/or Unexpired Leases and the Abandonment of Certain personal Property, if Any* [Docket No. 1776] asserting claims for rent, late fees and $38,249.00 in attorney's fees.

8.    Throughout these Chapter 11 Cases, HVP2 filed several other motions in connection with the Lease seeking, *inter alia*, (i) payment of asserted administrative expenses, including postpetition rent (which was paid), stub rent and late fees, (ii) adequate protection, and (iii) attorney's fees in the amount of $38,249.00. *See* Docket Nos. 182, 390 and 1755.  On November 3, 2025, the Court issued its opinion [Docket No. 3159] (the "Opinion") and entered orders [Docket Nos. 3161, 3162 and 3163] (collectively, the "HVP2 Denial Orders") denying each of the HVP2 motions identified above.  HVP2 has since appealed the HVP2 Denial Orders. *See Notice of Appeal*; *and see HVP2 LLC v. New Rite Aid, LLC, et al.*, Case No. 25-17579 (RK) (D.N.J.) (the "Appeal").  The Appeal has been fully briefed and is *sub judice* before the United States District Court for the District of New Jersey.

9.    On December 12, 2025, the Court entered its *Supplemental Sixteenth Order Approving the Rejection of Certain Executory Contracts and/or Unexpired Leases and the Abandonment of Certain Personal Property, If Any* [Docket No. 3525] (the "Rejection Order"), overruling the objection of HVP2, authorizing the rejection of the Lease as of the Rejection Date. HVP2 did not appeal the Rejection Order, and the Rejection Order is now a final, non-appealable order.

10.    On December 11, 2025, HVP2 filed the Motion seeking payment of certain administrative expenses pursuant to sections 365(d)(3) and 503(b) of the Bankruptcy Code, as follows:

      a.    Postpetition taxes in the amount of $8,848.96;
      b.    Water charges in the amount of $167.65; and
      c.    Attorney's fees in the amount of $38,249.00.

11.    While HVP2's Motion seeks the allowance and payment of taxes and water charges that were not asserted in its prior filings, in its Motion, HVP2 seeks, for at least the third time, the allowance and payment of attorney's fees.  The asserted attorney's fees were all incurred immediately following the Petition Date and bear no relation to any fees incurred in connection with the Motion and HVP2's purported enforcement of allegedly defaulted obligations.  Indeed, a plain review of the document attached to the Motion (Exhibit D) reveals that the services for which HVP2 seeks reimbursement were incurred well *before* the Motion was filed and are completely unrelated to the Motion (or the purported obligations sought thereby).  In fact, the requested attorneys' fees are in same amount set forth in HVP2's prior filings and already denied by this Court.[4]

## REPLY

**I.    The Court Should Reject the Certification in Support of the Motion and, Accordingly, Deny the Motion**

12.    The Motion is deficient in many respects, first among them that it fails to set forth a sufficient factual basis for the relief requested therein.  It is purported to be supported by a document styled as *Certification in Support of HVP2 LLC Motion for Payment of Administrative*

---

[4]    The listing of attorney's fees attached to the Motion (Exhibit D) are the same as that which HVP2 attached to its *Supplemental Certification in Further Support of HVP2 LLC Motion for Payment of Administrative Payment* [Docket No. 714], which it later withdrew [Docket No. 1777].

*Payment* signed by Shmuel Klein, HVP2's attorney, but not by a certification signed by anyone from HVP2 or by anyone with firsthand knowledge of the facts alleged therein.

13.     Local Rule 9013-1 requires that any motion consist of, among other things, "one or more certifications containing any facts not already in the record that form the basis of the relief requested.  The certification ***must be based on personal knowledge*** and otherwise comply with Local Bankruptcy Rule 7007-1."  D.N.J. L.B.R. 9013-1(a)(2) (emphasis added).  Local Rule 7007-1 requires that:

> Factual allegations presented in support of a motion ***must be contained in a sworn statement of the type referenced in 28 U.S.C. § 1746***.  The statement must be limited to facts within the personal knowledge of the signatory and attested to under penalty of perjury. The statement may not be combined with any legal argument.

D.N.J. L.B.R. 7007-1 (emphasis added).

14.     The United States Code is very specific with regard to unsworn declarations under penalty of perjury.  28 U.S.C. § 1746(2) provides as follows:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> .     .     .
>
> (2)     If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

28 U.S.C. § 1746(2).

15.      The "Certification" is signed by Shmuel Klein, HVP2's attorney.  Although Mr. Klein "certifies" that he has "actual knowledge of the . . . statements" in the Certification, he fails to identify how he has such "actual knowledge," as he does not appear to be an officer or employee of HVP2 to possess such knowledge.

16.      Moreover, the "Certification" fails to comply with the requirements of 28 U.S.C. § 1746(2), in that it fails to be executed under penalty of perjury.  It states only "I, Shmuel Klein certify actual knowledge of the foregoing statements and they are true." [Docket No. 3513-1, pg. 1 of 3].  Mr. Klein does not execute the "Certification" under penalty of perjury.[5]

17.      Courts in this district have rejected such certifications.  *See, e.g.*, *United States v. Branella*, 972 F. Supp. 294, 300 (D.N.J. 1997) (finding that the certifications stating: "I hereby certify that all of the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment." did not satisfy the statutory requirements in 28 U.S.C. § 1746); *see also Tukesbrey v. Midwest Transit, Inc.*, 822 F.Supp. 1192, 1198 (W.D.Pa.1993) (non-conforming, unsworn materials to be stricken).

18.      In *Branella,* the court further explained that, with respect to unsworn declarations, "[c]ritical in the statutory prerequisite is the phrase 'under penalty of perjury,' as the purpose of 28 U.S.C. § 1746 is 'to set the stage for a federal prosecution in the event of falsity.'"  *Branella* at 300 (citations omitted).

---

[5]      In contrast, the Certification of Service attached to the Motion is signed under penalty of perjury, containing the following statement: "I certify under penalty of perjury that the above documents were sent using the mode of service indicated."

19.     Accordingly, given that the "Certification" is not based on personal knowledge (in violation of Local Rule 9013-1) and, even if it was, because there is a substantial departure from the requirements of section 1746 and Local Rule 7007-1, the "Certification" should be stricken from the record and the Motion denied as lacking any factual support.[6]

**II.     If the Court Does Consider the Motion, HVP2 Is Not Entitled to Allowance and Payment of an Administrative Expense**

20.     If the Court considers the Motion, notwithstanding the fatal deficiencies with respect to the "Certification", it should deny each of HVP2's requests. *First,* none of the amounts sought arise during the postpetition, pre-rejection period such that they would be obligations under section 365(d)(3) of the Bankruptcy Code. *Second,* HVP2 has not satisfied its heavy burden under section 503(b) of the Bankruptcy Code to establish that any such amounts sought are entitled to administrative expense priority. *Third*, with respect to attorney's fees, this Court has already denied such attorney's fees (for the reasons set forth in the Opinion), including HVP2's failure to carry its burden, and should likewise deny the latest (serial) request, particularly in light of the Appeal.

### a.     HVP2's Asserted Claims Are Not Obligations Arising Under to Section 365(d)(3) of the Bankruptcy Code

21.     The Bankruptcy Code provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

---

[6]     The Motion does not include any other pleading that this Court could rely upon in determining whether any amounts are due.

22.      The United States Court of Appeals for the Third Circuit follows the "billing date" approach to determine if an obligation arises post-petition and pre-rejection with respect to claims asserted pursuant to section 365(d)(3) of the Bankruptcy Code.  The Third Circuit has explained that under the billing date approach, "an obligation arises under a lease for the purposes of § 365(d)(3) ***when the legally enforceable duty to perform arises under that lease***".  *Centerpoint Properties v. Montgomery Ward Holding Corp. (in re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 211 (3d Cir. 2001) (emphasis added) (citing cases).  In order to determine when the legal obligation arises, the Court will "look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.'" *Id.* at 209.  While the Bankruptcy Code does not define "obligation", the Third Circuit held that "the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one becomes legally obligated to perform." *Id.*  Ultimately, the Court in *Montgomery Ward* found that, because the operative lease required payment of taxes "upon receipt of an invoice" such taxes that were invoiced by the landlord post-petition and pre-rejection were obligations pursuant to section 365(d)(3).  *See also In re Valley Media, Inc.*, 290 B.R. 73, 76 (Bankr. D. Del. 2003).

23.      Courts in the Third Circuit, following *Montgomery Ward*, look to the terms of the operative lease to determine when an obligation arises for the purpose of determining whether such obligations are due pursuant to section 365(d)(3) of the Bankruptcy Code.  *See In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) (finding that where the operative lease provides that taxes were to be paid by the tenant when such taxes are "due and payable" the obligation arises "prior to the date a fine, penalty or interest is imposed"); *In re WCI Communities, Inc.*, No. 08-11643 KJC, 2010 WL 3523061, at *3 (Bankr. D. Del. Sept. 2, 2010) (looking to applicable

9

statutory authority to determine when taxes are due where the operative lease provides that the debtor-tenant shall pay real property taxes when they "fall due"); *In re Sportsman's Warehouse, Inc.*, 436 B.R. 308, 316 (Bankr. D. Del. 2009) (finding that where the lease provides that the debtor was required to pay taxes "as and when due and before penalty accrues for nonpayment" such obligation arose for the purposes of section 365(d)(3) on the last day the taxes could be paid without penalty).

24.     With respect to taxes, the Lease provides, in relevant part, as follows:

> Landlord shall cause all Real Estate Tax bills and assessments regarding the Premises to be sent directly to Tenant, and with respect to time periods from and after the Rent Commencement Date until the end of the Term, Tenant shall pay all Real Estate Taxes **on or prior to the date such Real Estate Taxes are due**.  The Real Estate Taxes for any tax year shall mean such amounts as shall be finally determined to be the Real Estate Taxes payable during such tax year less any abatements, refunds or rebates made thereof.  Upon written request from Landlord, Tenant shall provide Landlord with evidence of payment for all Real Estate Taxes paid by Tenant.

*See* Lease, § 5.2 (Emphasis Added).

25.     Unlike *Montgomery Ward*, the Lease does not require payment upon receipt of an invoice.  Instead, the Lease requires that the Debtors pay the taxes prior to the date on which they are due.  The taxes for the period covering July 1, 2025 through December 1, 2025 (the second half taxes) are explicitly "due without penalty by Sep 02, 2025."  *See* Motion, Ex. B.  The Motion critically misstates the due date, advising that the "second half amount of tax was due July 31, 2025."  *See* "Certification", ¶ 4.  In accordance with *Montgomery Ward* and those cases applying *Mongomery Ward*, there was no legally enforceable obligation to pay such taxes during the postpetition, pre-rejection period.

26.     With respect to the purported water charges, the Lease provides, in relevant part, as follows:

> Tenant shall pay the applicable utility companies or governmental agencies directly for any and all utilities consumed on the Premises by Tenant. Landlord shall not take or permit any person claiming under Landlord to take, any action which shall interrupt or interfere with any electric, gas, water, sewage, cable, internet, electronic, telephone, fiber optic or any other communication service to the Premises.

*See* Lease, § 5.8.

27. Unlike *Montgomery Ward* and its progeny, the Lease does not specify a deadline to pay any such water bills. The municipality where the Leased premises are located publishes a billing schedule, which provides water bills are due 30 days from the bill date.[7] The Landlord avers that the water bills are due and payable under section 365(d)(3), as follows:

| Quarter | Period Covered | Billed Date | Due Date (Asserted) |
|---|---|---|---|
| 2nd | 10/15/2024 through 1/14/2025 | March 14, 2025 | April 18, 2025 |
| 3rd | 1/14/2025 through 4/15/2025 | June 13, 2025 | July 18, 2025 |
| 4th | 4/15/2025 through 7/23/2025 | September 12, 2025 | October 22, 2025 |

As shown in the above table, only the 3rd quarter water bill fell due during the post-petition, pre-rejection period. However, the Lease does not require that the bill be paid on its due date, *i.e.*, if the Debtors chose to pay a water bill after the July 18, 2025 due date HVP2 would have no recourse under the Lease. Accordingly, there is no *legally enforceable duty* to pay the water bill during the post-petition, pre-rejection period.[8]

---

7 https://www.troyny.gov/252/Water-Billing

8 It bears noting that despite the allegations in paragraph 5 of the "Certification," on October 28, 2025, approximately six weeks prior to the filing of the Motion, the Debtors actually paid a prorated amount on account of the water charges relating to the post-petition, pre-rejection period (in the amount of $76.71). Moreover, despite the allegation in the "Certification" that the pre-petition bill that came due on April 18, 2025 was "unpaid," on April 9, 2025, the Debtors timely paid that bill in full (in the amount of $96.70).

28.     Based on the foregoing, the Court should deny HVP2's request for payment of the taxes and water charges pursuant to section 365(d)(3) of the Bankruptcy Code.

### b.     HVP2 Has Not Met Its Burden Sufficient to Allow an Administrative Expense Pursuant to Section 503(b)

29.     HVP2 asserts that the amounts sought in the Motion are actual or necessary costs of preserving the estate, such that its request for payment should be allowed under section 503(b) of the Bankruptcy Code.

30.     A party moving for administrative expense priority treatment bears a heavy burden to establish entitlement to priority treatment. *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) ("To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.") (internal citation omitted); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) ("A party seeking payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.") (internal citation omitted); *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) ("In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed.") (citing *Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir. 1988)); *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 4-5 (1st Cir. 1992) ("The traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses.") (citing *S. Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir. 1985)).  To meet its burden, a party moving for payment

12

of administrative expense generally must demonstrate that the expense (i) arose from a post-petition transaction between such party and the debtor, and (ii) conferred a benefit upon such debtor's bankruptcy estate. *See In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (citing *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005)).

31. Although the Liquidating Trustee acknowledges that the bankruptcy estate received a benefit for its continued occupancy during the post-petition, pre-rejection period, the Liquidating Trustee submits the estate already "paid" for that benefit through the payment of all obligations arising under the Lease that came due during the post-petition, pre-rejection period, including all Minimum Rent that came due pursuant to section 365(d)(3) (for the months of June and July 2025) and the allocable portion of the Minimum Rent relating to the "stub period." Moreover, while the Liquidating Trustee does not dispute that the Lease provides for other obligations, including real estate taxes and utilities (as it also does for a whole host of obligations, including post-rejection date Minimum Rent), that does not convert those obligations automatically to administrative obligations of the Debtors' estate. As discussed above, none of the obligations sought in the Motion came due, *i.e.*, became enforceable, during the post-petition, pre-rejection period. Thus, they were not obligations that the Debtors were required to satisfy in order to meet its obligation to perform under the Lease pursuant to section 365(d)(3) of the Bankruptcy Code (and generally required to be paid "notwithstanding section 503(b)(1)"). To meet its heavy burden to establish a right to payment of an administrative expense, HVP2 must do more than simply argue the obligations exist under the Lease; it must demonstrate what the value of the benefit conferred upon the estate.

32. Putting aside the issue of the defectiveness of the "Certification" submitted with the Motion, HVP2 utterly fails to do that. Nowhere in the Motion does HVP2 allege any facts,

circumstances or evidence of the value of the benefit the estate received during the post-petition, pre-rejection period. HVP2 altogether ignores that it has that heavy burden. In other words, HVP2 fails to make any effort to demonstrate the value conferred and why the estate's timely and full payment of the Minimum Rent due under the Lease did not adequately compensate HVP2 for the benefit the estate received during the post-petition, pre-rejection period. *Cf. In re DVI, Inc.*, 308 B.R. 703, 707-08 (Bankr. D. Del. 2004) ("A landlord is entitled to an administrative claim in the amount of the fair market value of the premises when a debtor occupies and uses them post-petition.").[9]

33.     HVP2's failures in this regard are fatal to a request under section 503(b)(1). *See Sportsman's Warehouse,* 436 B.R. at 310 (requiring an analysis of the evidence submitted to "determine, on a case by case basis, the amount of the benefit to the estate."); *and see In re Muma Serv. Inc.,* 279 B.R. 478, 491 (Bankr. D. Del. 2002) (denying an administrative claim when claimant provided no evidence as to how the claim benefitted the debtor's estate). While HVP2 may have been adversely impacted by the Debtors' non-payment of the sought after obligations, that "adverse impact" does not equate to the benefit the estate received. *See*, *e.g.*, *In re DBSI, Inc.*, 407 B.R. 159, 165-66 (Bankr. D. Del. 2009) ("As to the rent and CAM charges, these expenses occurred post-petition, in November and December 2008. Obviously, the amount of rent and CAM charges that the TIC Owners did not receive for November and December 2008 resulted in an

---

[9]   Notwithstanding HVP2's failure to meet its burden and the Liquidating Trustee and the Wind-Down Debtors' view that the mere accrual of taxes during the post-petition, pre-rejection period does not, in and of itself, entitle a landlord to an administrative expense equal to the per diem/pro-rated amount of such taxes for that period, in light of the Court's ruling on the record at the December 8, 2025 hearing on *RWY Trust's Motion for Immediate Payment of Post-Petition Expenses Under Section 365(d)(3)* [Docket No. 3190] and the corresponding *Order Granting, in Part, and Denying, in Part, RWY Trust's Motion for Immediate Payment of Post-Petition Expenses Under Section 365(d)(3)* [Docket No. 3550] incorporating that ruling, to resolve the Motion, the Liquidating Trustee offered to pay HVP2 an amount equal to the postpetition, pre-rejection portion for the amounts asserted on account of the real estate taxes and water charges. HVP2 rejected the Liquidating Trustee's offer as it failed to include a payment on account of attorney's fees satisfactory to HVP2 necessitating this Objection.

adverse financial impact on the TIC Owners.  However, that fact is not the equivalent of a benefit to DBSI Housing's estate.  It is unclear how these expenses may have benefitted DBSI Housing's estate.")

34.     Accordingly, the Court should deny HVP2's request for payment of an administrative expense pursuant to section 503(b) of the Bankruptcy Code.

### c.     HVP2 Is Not Entitled to Attorney's Fees, which Request the Court has Already Denied

35.     HVP2 seemingly asserts the same attorney's fees that were previously requested and denied by this Court.  The Court's Opinion and HVP2 Denial Orders denying such fees were each entered prior to the submission of this Motion and are subject to the pending Appeal.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal", which is known as the "divestiture rule".  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L. Ed. 2d 225 (19820); *and see In re 710 Long Ridge Rd. Operating Co., II, LLC*, 2014 WL 1648725, at *3 (Bankr. D.N.J. Apr. 24, 2014).  As Judge Steckroth in *710 Long Ridge* explained:

> The function of the divestiture rule is "to prevent interference from the lower court while the appeal is pending and to conserve judicial resources by having only one court at a time review issues." [*In re Sacred Heart Hosp. of Norristown*, 204 B.R. 132, 143 (E.D. Pa. 1997) *aff'd*, 133 F.3d 237 (3d Cir. 1998)]; *see also* [*In re Whispering Pines Ests., Inc.*, 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007)]("***[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.***"). Thus, a court cannot take action that will alter or modify its prior order while that order is pending on appeal. *See In re G–I Holdings, Inc.,* 472 B.R. 263, 281 (Bankr. D.N.J. 2012) (noting courts do not have jurisdiction to modify orders, particularly when the movant is attempting to relitigate issues previously before the court); *In re Southold Dev. Corp.,* 129 B.R. 18, 21 (E.D.N.Y.

1991) (noting district court's reversal of a bankruptcy court's decision to allow the debtor to modify its confirmed plan while the creditor's appeal of the order confirming plan was pending, finding that the court had no jurisdiction to so modify the plan).

*710 Long Ridge Rd.*, at *3 (emphasis added).

36.     Based on the pending Appeal, this Court has been divested of its jurisdiction with respect to the asserted attorney's fees, particularly since any order granting such fees would render the Appeal moot, in part, circumventing the District Court's authority.  If the Court elects to enter an indicative ruling pursuant to Bankruptcy Rule 8008, or HVP2 demonstrates that the fees are separate and distinct or that the Motion provides a separate basis for the same fees, the Court should similarly deny the request as it previously did (for reasons similar to those set forth in the Opinion).

37.     HVP2 presumably asserts that its legal fees are due pursuant to section 365(d)(3) of the Bankruptcy Code.  As set forth in the Opinion, the Court considered HVP2's request for attorney's fees in connection with amounts asserted under the Lease.  The Court explained:

> It is true that some bankruptcy courts have allowed as administrative expenses a landlord's attorneys' fees under section 365(d)(3) of the Bankruptcy Code if such fees were (1) reasonably incurred for the purpose of enforcing performance under the lease, (2) authorized under the terms of the lease, and (3) supported by detailed invoices. *See*, *e.g.*, *In re Pelican Pool & Ski Ctr., Inc.*, 2009 Bankr. LEXIS 4623, at *43-50 (Bankr. D.N.J. July 27, 2009) ("*Pelican Pool*") (allowing post-petition, pre-rejection attorneys' fees pursuant to section 365(d)(3), pending the court's determination of the reasonableness of such fees); *In re Pac-West Telecomm, Inc.,* 377 B.R. 119, 126 (Bankr. D. Del. 2007) (court agrees to consider payment of attorneys' fees under section 365(d)(3) upon the submission of detailed invoices). Indeed, as the court in *Pelican Pool* observes, "where authorized by a provision in the lease enforceable under state law, a landlord is entitled to attorney's fees when such fees are reasonably incurred for the purpose of enforcing performance under the lease." *Id.* at *46.

*Opinion*, Docket No. 3159.

38.     With respect to attorneys' fees, the Lease provides as follows:

> In the event that either Landlord or Tenant seeks enforcement of its rights and commences any suit for the collection of any amounts for which the other may be in default or for the performance of any other covenant or agreement hereunder, the prevailing party shall be entitled to be reimbursed by the other party for reasonable attorneys' fees and expenses incurred in enforcing such obligations and/or collecting such amounts.

*See* Lease, § 21.3.

39.     The Court explained that "HVP2's entitlement to legal fees and expenses rests upon a showing that HVP2 (a) is the 'prevailing party' (b) in a suit (c) seeking enforcement of its rights (d) where the Debtors are in default or for the performance of any covenant or agreement under the Lease and (e) such fees and expenses were incurred in enforcing such obligations and/or collecting such amounts." *Opinion,* pg. 7.

40.     In filing the Motion, and seeking what appears to be the same attorney's fees previously included in HVP's prior motions and filings, HVP2 has seemingly disregarded and failed to demonstrate how the attorney's fees would be allowable consistent with the factors set out in the Court's Opinion.  Specifically, HVP2 has failed to demonstrate any of the requirements under the Lease necessary to support a claim for attorneys' fees, as expressly outlined by the Court. Because HVP2 cannot establish that any obligations set forth in the Motion are due or owing under § 365(d)(3), there are no obligations for which the Debtors were in "default" or that it could "enforce" and, as such, it cannot, respectfully, qualify as a "prevailing party" in any suit or action predicated on an alleged default by the Debtors under any covenant of the Lease.  Additionally, a plain review of Exhibit D to the Motion confirms that none of the attorney's fees sought were "incurred in enforcing … obligations and/or collecting … [the] amounts" sought in the Motion.

41.     Moreover, applying the *Pelican Pool* factors, HVP2 has not demonstrated that the asserted fees were reasonably incurred for the purpose of enforcing performance under the Lease.

The invoice attached to the Motion reflects time entries largely devoted to reviewing pleadings in May 2025, the first month of the Chapter 11 Cases and nearly six months prior to the filing of the Motion. Those entries bear no relationship to the Motion itself or to any efforts to enforce the Lease. Compounding these deficiencies, HVP2 seeks $38,249.00 in attorneys' fees while only producing invoices totaling only $16,950.00. Finally, the Debtors submit that HVP2 has not asserted, nor could it, that $38,249.00 constitutes a reasonable fee for the preparation of a three-page "Certification," together with a notice and order, which collectively comprise the pending Motion.

42.     Accordingly, the Court should deny HVP2's request for attorney's fees. If the Court, in denying the Motion, determines that the Liquidating Trustee, on behalf of the Wind-Down Debtors, is the "prevailing party", the Liquidating Trustee requests that the Court allow his counsel to submit a declaration in support of an award of the fees incurred in defending the Motion.

**III.    To the Extent the Court Allows any Claim, the Liquidating Trustee Requests a Reasonable Time to Make Payment**

43.     The Motion requests that "Debtor be compelled to pay $8,848.96 for post-petition taxes, water charges and penalties plus attorney's fees within 10 days of an Order of this Court." To the extent any portion of the claims sought in the Motion are determined to have been an obligation that was required to be satisfied under sections 365(d)(3) or 503(b)(1) of the Bankruptcy Code, the Liquidating Trustee respectfully requests that the Court modify the requested period of time to satisfy such obligation and instead direct that such payment be made 14 days after any order allowing and directing such payment becomes a final, non-appealable order.

*[Remainder of page intentionally left blank]*

18

## CONCLUSION

For the foregoing reasons, the Liquidating Trustee respectfully requests that the Court deny

the Motion and grant the Liquidating Trustee such other relief as is just and proper.

Dated:  April 16, 2026

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
David M. Bass, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for the Liquidating Trustee and Wind-Down Debtors*