Ryan P. McCarthy, Esq. **Attorney ID#: 219022016**
James E. Goodley, Esq. **Attorney ID#:048572013**
**GOODLEY McCARTHY LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Attorneys for Plaintiffs

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>LAKEHURST AND BROADWAY CORPORATION,<br><br>Debtor. | Case No. 25-14831 (MBK)<br>Chapter 11<br>Hearing Date: _____ |

### BRIEF IN SUPPORT OF MOTION TO PERMIT FILING OF LATE-FILED CLAIMS

Creditors Andre Scheepers, Gerald Stahl, Stephanie Downey, Lewis Hunter, Christina Zlinksy, Jennifer Motchnik, Anthony Coleman, and Erin Lopomo (collectively, "WARN Creditors"), by and through undersigned counsel, hereby submit this Motion to Permit the late-filing of their administrative expense and/or proofs of claims, and state the following in support thereof:

### BACKGROUND

1.      WARN Creditors were employees of Rite Aid of New Jersey, Inc. (together with New Rite Aid, LLC and any other affiliates, "Rite Aid") and worked in Rite Aid's New Jersey offices at 701 Delran Parkway, Delran, NJ 08075.

2.      Prior to and after Rite Aid's bankruptcy petition, WARN Creditors received WARN Letters from Rite Aid's Chief Financial Officer, Steven Bixler, regarding Rite Aid's potential shutdown, WARN Creditors' assigned termination dates, and severance compensation

1

that would be paid to WARN Creditors pursuant to the New Jersey Millville Dallas Airmotive Plan Job Loss Notification Act, N.J.S.A. 34:21-1 *et seq.* ("NJ WARN").

3. Between May 5, 2025 and December 10, 2025, Rite Aid sent WARN Creditors several WARN Letters regarding their NJ WARN severance and informing WARN Creditors that their termination dates had been extended "because continued employment is necessary to continue our operations for a period of time." Examples of these WARN Letters are attached to WARN Creditors' filed claims, which are attached hereto at **Exhibits 1-8**.

4. On December 10, 2025, WARN Creditors received their final WARN Letter, informing them that their terminations dates would be sometime during the 14-day period commencing on December 31, 2025, and that they were eligible for and would receive severance under NJ WARN following their terminations.

5. WARN Creditors worked for Rite Aid through and including December 31, 2025.

6. According to the Notice of Disallowance and Expungement of Late-Filed Claims ("Notice of Disallowance," ECF No. 374), the Effective Date occurred on December 31, 2025 and the bar date for WARN Creditors to file their claims was January 30, 2026.

7. WARN Creditors' NJ WARN claims did not ripen until on or after the Effective Date. It was not until January 13, 2026 that WARN Creditors received for the first time an email from Rite Aid human resources (hrservices@riteaid.com) informing WARN Creditors that Rite Aid would not honor its promise and obligation to pay WARN Creditors their NJ WARN severance owed.

8. According to the Notice of Disallowance, WARN Creditors therefore only had about <u>17 days</u> from the date their NJ WARN claims arose to file their claims in this bankruptcy.

9.      WARN Creditors, who were known to Rite Aid, were not provided with notice that their deadline to file their NJ WARN claims in this bankruptcy was January 30, 2026.

10.      Additionally, at the time of their terminations, as well as in or around the time WARN Creditors retained undersigned counsel (between January 30, 2026 and February 2, 2026) and currently, the Kroll Restructuring Administration ("Kroll") website for the instant bankruptcy proceedings, through which creditors such as WARN Creditors may file proofs of claim and administrative expense requests for payment in this bankruptcy, states on the page titled, "Submit a Claim," that the General Bar Date (and "Government Bar Date") to file claims is "TBD," or "to be determined," indicating that no deadline had yet been set for creditors such as the WARN Creditors to file proofs of claim or administrative expense claims.[1]

11.      Between March 18, 2026 and March 20, 2026, WARN Creditors filed proofs of claim and administrative expense requests for payment relating to Rite Aid's failure or refusal to pay them their severance, pursuant to NJ WARN and contract.[2]

12.      On April 21, 2026, the Liquidating Trustee filed the Notice of Disallowance, which indicated that NJ WARN Creditors' claims were late, in that they were filed after the January 30, 2026 bar date. The Notice of Disallowance further stated that the claims of NJWARN Creditors "Are hereby Disallowed, expunged and removed from the Claims Register, without the need for any further order of the Court." **Notice of Disallowance at p. 3**.

---

[1] Attached at **Exhibit 9** is a true and correct copy of an April 22, 2026 screenshot of the "Submit a Claim" page on the Kroll site associated with these bankruptcy proceedings.

[2] Because WARN Creditors rendered services to Rite Aid post-petition, their NJ WARN claims accrued or vested post-petition, and any award pursuant to NJ WARN will occur post-petition, their NJ WARN claims are entitled to administrative priority under 11 U.S.C. § 503(b)(1)(A). *See Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, 394 B.R. 765 (Bankr. D. Del. 2008); *Matthews v. Truland Grp., Inc. (In re Truland Grp., Inc.)*, 520 B.R. 197 (Bankr. E.D. Va. 2014).

13.     Based on these facts, WARN Creditors submit that good cause exists to permit the filing of WARN Creditor's claims, and respectfully request that the Court permit the filing of their claims, notwithstanding the bar date for administrative expense claims.

**ARGUMENT**

**I.    WARN Creditors' NJ WARN Claims Arose On or After the Effective Date, and Therefore Are Not Bound by the January 30, 2026 Bar Date**

14.     In *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221 (3d Cir. 2021), the Third Circuit addressed whether an employment discrimination claim, which arose after plan confirmation <u>but prior to the plan's effective date</u>, was subject to the bar date for administrative expense claims, and therefore subject to discharge if filed late.

15.     The Court held that the discrimination claim was subject to the bar date, but further noted that "Administrative Claims Bar Date could not discharge claims arising <u>after</u> the Effective Date." *Ellis*, 11 F.4th at 238 (emphasis added).

16.     Here, WARN Creditors' claims did not arise until on or after December 31, 2025 or January 13, 2026, and therefore were not subject to the January 30, 2026 Claims Bar Date.

17.     Accordingly, the Court should permit the filing of WARN Creditors' claims as timely, or otherwise hold that such claims are not subject to discharge in this bankruptcy.

**II.    Constitutional Due Process and the Bankruptcy Rules Require the Court to Permit the Late Filing of the Claims**

a.    <u>WARN Creditors Were Not Provided Constitutional Due Process</u>

18.     "Inadequate notice is a defect which precludes discharge of a claim in bankruptcy." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

19.     "Due process requires notice that is 'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a

response.'" *Id.* (quoting *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735 (5th Cir. 1995)).

20.    "Known creditors must be provided with actual written notice of a debtor's bankruptcy filing <u>and bar claims date</u>." *Id.* (citing *City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 296, 97 L. Ed. 333, 73 S. Ct. 299 (1953) (emphasis added).

21.    "As characterized by the Supreme Court, a 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" *Id.* (quoting *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988)). "An 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 94 L. Ed. 865, 70 S. Ct. 652 (1950) (alteration in original). "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts.'" *Id.* (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983)). "In other words, adequacy of notice 'turns on whether the debtor ... knew about the claim or, with reasonable diligence, should have known.'" *In re GEO Specialty Chems., Ltd.*, 577 B.R. 142, 190 (Bankr. D.N.J. 2017) (quoting *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014).

22.    Here, WARN Creditors were known creditors to Rite Aid, in that, among other reasons: (1) Rite Aid sent WARN Creditors periodic WARN Letters throughout 2025, notifying them that they were entitled to and would be paid severance under NJ WARN if they stayed through their assigned termination dates, including but not limited to a notice dated December 10, 2025, which informed WARN Creditors that their termination would occur within the 14-day

period beginning December 31, 2025, and that they were eligible to and would receive NJ WARN severance; (2) following their terminations, WARN Creditors asked to be paid their NJ WARN severance; and (3) in response, on January 13, 2026, Rite Aid informed WARN Creditors for the first time that they would not be paid the promised severance.

23.     Under these circumstances, there can be no question that Rite Aid was aware of the WARN Creditors and their claims to NJ WARN severance. Rite Aid repeatedly told WARN Creditors that they were eligible for severance under NJ WARN, and then following terminations, told NJ WARN Creditors that Rite Aid would not be paying the promised severance.

24.     WARN Creditors were not provided Constitutional Due Process, because they were not given any notice of the bar date. Neither Rite Aid nor any other party in this bankruptcy informed WARN Creditors that they had to file their claims for unpaid severance on or before January 30, 2026.

25.     Additionally, the Kroll website maintained for the instant bankruptcy proceedings, at the page titled "Submit a Claim," which permits a creditor to submit a prep-petition proof of claim and/or administrative expense claim, states that the General Bar Date is "TDB." If the general bar date had not even been determined, it would stand to reason that the deadline for filing administrative expense claims had also not been scheduled. *Ellis*, 11 F.4th at 227. ("As is typical in bankruptcy cases, the bar date for postpetition administrative expense claims is later than the general prepetition claims bar date because the estate continues to incur expenses throughout the bankruptcy.").

26.     Even if formal written notice of the January 30, 2026 bar date was provided to WARN Creditors by January 13, 2026 when WARN Creditors were told in writing that they would not be receiving their severance (it was not), 17 days is not sufficient to satisfy due process, as it

6

is not "a reasonable time for a response." *Chemetron Corp.*, 72 F.3d at 346; *see also Ellis*, 11 F.4th at 237 ("a claim is only subject to discharge if a creditor received adequate notice of the bankruptcy **and had a fair opportunity to press his claim**") (citing *Chemetron Corp.*, 72 F.3d at 346).

27.     The claims of WARN Creditors should be permitted notwithstanding the bar date, or their claims should otherwise not be subject to discharge, given that they were not provided any notice of the bar date, and therefore were deprived of Constitutional Due Process.

  b. <u>WARN Creditors Were Not Provided Notice Required by the Bankruptcy Rules</u>

28.     "In addition to satisfying the requirement of due process, a debtor is also obligated to meet the requirements of the Bankruptcy Rules." *In re Cyber Litig.*, No. 20-12702 (CTG), 2021 LX 17462, at *18 (Bankr. D. Del. Oct. 21, 2021).

29.     Bankruptcy Rule 2002 requires that creditors be provided actual notice of a claims deadline, by first class mail, at least 21 days in advance of the bar date. *Id.* at *18-21 ("The clear import of the Bankruptcy Rules, therefore, is that a creditor is entitled to receive notice of the bar date by mail, at the address required by Bankruptcy Rule 2002(g).").

30.     In *Cyber Litig.*, the court held that constitutional due process was satisfied by the debtor providing notice of the bar date to the principal of the coporate creditor via email, but held that email notice was insufficient under Rule 2002, which requires actual notice via first class mail. *Id.* at *13-21. The court further held that the failure to mail did not constitute harmless error, even though email notice was sent to the principal of the creditor. *Id.* at *20-21.

31.     Here, as discussed above, NJ WARN Creditors were not provided any notice of the January 30, 2026 bar date, let alone the email notice deemed to be insufficient in *Cyber Litig.*

32.     Moreover, because their claims did not accrue until January 13, 2026, they were not provided the 21 days' notice required by Bankruptcy Rule 2002.

33.    As the WARN Creditors were not provided the notice required by Bankruptcy Rule 2002, their claims should be allowed or deemed timely filed notwithstanding the bar date, or otherwise not subject to discharge in this bankruptcy.

**III.    Alternatively, the Court Should Permit the Late-Filing of WARN Creditors' Claims for Cause, Pursuant to Section 503(a) of the Bankruptcy Code**

34.    "Section 503(a) provides that '[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.'" *Ellis*, 11 F.4th at 232.

35.    "To avoid unnecessarily harsh results, a claimant can still file a claim after the bar date if he shows 'excusable neglect.'" *Id.* (citing *In re Energy Future Holdings Corp*, 949 F.3d 806, 814 (3d Cir. 2020)).

36.    Courts analyze the "excusable neglect" for the late filing of administrative claims under the same excusable neglect standard that is applied to pre-petition proofs of claim. *Ellis*, 11 F.4th at 232, n.6 ("Still, much of the logic and case law about general bar dates for prepetition claims apply with equal force to administrative expense claims…. courts have often relied on the 'excusable neglect' standard to determine 'whether to allow a tardily filed request for payment of an administrative expense'") (quoting 4 Collier on Bankruptcy ¶ 503.02[2]).

37.    In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), the Supreme Court set forth the standard for analyzing whether a late-filed claim should be permitted due to excusable neglect. *In re Interstate Grocery Distributions Sys.*, 267 B.R. 907 (Bankr. D.N.J. 2001).

38.    "The Supreme Court held that 'Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or

carelessness, as well as by intervening circumstances beyond the party's control.'" *Id.* (quoting

*Pioneer*, 507 U.S. at 388).

39.    "The Supreme Court in *Pioneer* stated that whether neglect is excusable is an

'equitable' determination that 'takes account of all relevant circumstances surrounding the party's

omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395).

40.    "To make an excusable neglect determination, the Court listed four factors for trial

courts to consider: 'the danger of prejudice to the debtor, the length of the delay and its potential

impact on judicial proceedings, the reason for the delay, including whether it was within the

reasonable control of the movant, and whether the movant acted in good faith.'" *Id.* (quoting

*Pioneer*, 507 U.S. at 395).

a.    Danger of Prejudice to the Debtor

41.    "[P]rejudice is not an imagined or hypothetical harm; a finding of prejudice should

be a conclusion based on facts in evidence." *Manus Corp. v. NRG Energy, Inc.*, 188 F.3d 116, 127

(3d Cir. 1999).

42.    In *Manus*, the Third Circuit "examined cases from several other circuits and

determined that mere delay or unanticipated costs were insufficient to establish prejudice…." *In

re JPmorgan Chase Bank, N.A. v. Pandolfelli*, Nos. 09-02068 (DHS), 09-02070 (DHS), 09-02072

(DHS), 09-02075 (DHS), 2010 Bankr. LEXIS 3244, at *7 (Bankr. D.N.J. Sep. 14, 2010) (citing

*Manus Corp.*, 188 F.3d at 126-27).

43.    "The Court also drew from its case law regarding prejudice in a non-

bankruptcy, Rule 60(b), context noting that 'one must assert loss of available evidence, increased

potential for fraud or collusion, or substantial reliance upon judgment.'" *Id.* (quoting *Manus Corp.*,

188 F.3d at 127).

44.    Other factors that may be relevant include: "the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims." *In re Draw Another Circle, LLC*, 595 B.R. 174, 181 (Bankr. D. Del. 2018) (quoting *Manus Corp.*, 188 F.3d at 126).

45.    Here, there can be no loss of available evidence, as WARN Creditors' employment was terminated very recently, on or about December 31, 2025. Rite Aid undoubtedly still has access to records relevant to the WARN Creditors' claims, such as the WARN Creditors' years of service and wages and benefits paid. *See* NJ WARN, N.J.S.A. § 34:21-2(b) (requiring employers to "Provide to each employee whose employment is terminated severance pay equal to one week of pay for each full year of employment.").

46.    There is no evidence of fraud or collusion. Rather, WARN Creditors merely seek to assert their claims for statutory and contractual severance owed, as a result of their termination on or around December 31, 2025.

47.    There can also be no substantial reliance on judgment, where the WARN Creditors' claims only recently ripened, and where the claims have not yet been adjudicated on the merits.

48.    Furthermore, the WARN Creditors' claims (average claim value of about $37,000) are relatively small in comparison to the large size of the estate. *See, e.g.*, Second Amended Disclosure Statement Relating to the Second Amended Joint Chapter 11 Plan, ECF No. 3445 at p. 204 of 355 (noting that in order to continue operations in the ordinary course, Debtors secured a commitment from their Prepetition ABL Lenders to provide a DIP financing facility, which is

10

comprised of $1.7 billion DIP asset-based resolving credit facility and $180 million loan facility); *id.* at p. 211 of 344 ("Through the Interim Financing Order, the Debtors were granted interim access to an aggregate $1.94 billion in commitments under the DIP Facilities to support working capital needs and administrative costs").

49.     Permitting the late filing of the WARN Creditors' claims would have a minimal impact on judicial administration of the estate.

50.     Given that Rite Aid sent WARN Letters to WARN Creditors prior to Plan confirmation (as early as May 5, 2025), it stands to reason that Rite Aid was aware of WARN Creditors' NJ WARN claims prior to submitting a proposed plan and prior to Plan confirmation.

51.     Given the relatively low value of WARN Creditors' claims in comparison to the estate, there would be, at most, little disruption to the confirmed Plan and the economic model on which the Plan was based.

52.     Permitting the late filing of these claims will not open the flood gates, in that the claims may only pertain to employees who physically worked for Rite Aid in New Jersey and who were not paid their severance as a result of termination within 90 days of December 31, 2025. N.J.S.A. § 34:21-2(c).

53.     There is no prejudice to Rite Aid in permitting the late-filed claims.

     b.   <u>Length of Delay and its Potential Impact on Judicial Proceedings</u>

54.     "'The length of the delay must be examined in 'absolute terms' or in an 'absolute sense,' meaning that the extent of the delay should be considered in isolation.'" *In re Energy Future Holdings Corp.*, 619 B.R. 99, 113 (Bankr. D. Del. 2020) (quoting *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 332, 57 V.I. 886 (3d Cir. 2012)).

55. The length of delay here was minimal. Indeed, WARN Creditors acted diligently in filing their claims. WARN Creditors filed their claims less than 2 months (at most, 49 days) after the bar date and only about 2 months after being notified that Rite Aid would not be paying their severance, and it would therefore be necessary to file a claim. *Cf. Manus Corp.*, 188 F.3d at 129-30 (holding bankruptcy court erred by not permitting relief from order where actual delay was only 2 months, notwithstanding important bankruptcy events that occurred during the interim, such as passage of the effective date: "Such an approach makes the two month delay seem significant, whereas a similar delay, or even a much longer delay in a case where the debtor proceeds more expeditiously to resolve outstanding claims under its contracts, or allows itself more time between confirmation and closing under its plan, would be insignificant."); *Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995) (remanding to determine excusable neglect where motion to file late claim occurred two years after plan was confirmed); *Eagle Bus Mfg. v. Rogers*, 62 F.3d 730, 740 (5th Cir. 1995) (finding excusable neglect where delay was six to eight months).

56. This factor weighs in favor of allowing the late-filed claims due to excusable neglect.

    c. <u>The Reasons for the Delay, Including Whether it Was Within the Reasonable Control of Movant</u>

57. "In *Pioneer*, the delay in answering was due to the inadvertence of the defendant's counsel who failed to respond within the allowable time due to the 'peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting,' without any indication of the significance of the bar date, [which] left a 'dramatic ambiguity' in the notification.'" *In re JPmorgan Chase Bank,* 2010 Bankr. LEXIS 3244, at * (Bankr. D.N.J. Sep. 14, 2010) (quoting *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 385 (1993)).

58.    "Similarly, the Third Circuit, in *Manus*, found that an ambiguous notification provided grounds for excusable neglect." *Id.*

59.    The Third Circuit and Supreme Court have made clear that the reason for the delay need not be for reasons solely out of the control of the movant. *See In re Herman's Sporting Goods*, 166 B.R. 581 (Bankr. D.N.J. 1994) ("Debtor contends that movant has not established an adequate reason for the delay in filing the lease rejection claim because the circumstances were entirely within counsel's control. The court rejects Debtor's argument because blamelessness on the part of the movant is no longer the standard of 'excusable neglect.' The Supreme Court meticulously justified its rejection of the standard, urged by the dissent and the debtor in this case, that reason for the delay be based on circumstances beyond the control of the movant.") (discussing and quoting *Pioneer*, 139 S. Ct. at 1495-99); *see also Manus Corp.*, 188 F.3d at 128 ("The Bankruptcy Court was also influenced because the cause for delay was within Manus's control, since it admittedly received the Application advising of the hearing and Manus's need to assert its claim, but chose not to read it carefully or to ask counsel for guidance. While it is certainly relevant that the delay in this case was due in part to this lack of care on the part of Manus, the concept of excusable neglect clearly anticipates this, i.e., neglect on the part of the one seeking to be excused.").

60.    Here, the reasons for the delay weigh in favor of permitting the late-filed claims due to excusable neglect. WARN Creditors were not terminated until December 31, 2025, and were not told that Rite Aid was denying their right to NJ WARN severance until January 13, 2026, just 17 days before the bar date.

13

61.     WARN Creditors were also not provided notice of the bar date, and therefore were not aware that they had to file their claims for severance in this bankruptcy in under 3 weeks (just 17 days).

62.     Additionally, the Kroll website maintained for the instant bankruptcy proceedings, at the page titled "Submit a Claim," which permits a creditor to submit a prep-petition proof of claim and/or administrative expense claim, states that the General Bar Date is "TDB." If the general bar date had not even been determined, it would stand to reason, to both WARN Creditors and their counsel, that the deadline for filing administrative expense claims had also not been scheduled. *Ellis*, 11 F.4th at 227. ("As is typical in bankruptcy cases, the bar date for postpetition administrative expense claims is later than the general prepetition claims bar date because the estate continues to incur expenses throughout the bankruptcy.").

63.     This factor weighs in favor of permitting the filing of the late-filed claims.

d.  <u>Whether the Movant Acted in Good Faith</u>

56.     There is nothing to suggest that WARN Creditors have not acted in good faith.

57.     As such, based on the foregoing, all factors weigh in favor of permitting the late-filed claims due to excusable neglect.

## **CONCLUSION**

58.     For the foregoing reasons, WARN Creditors respectfully request that the Court deem their proof of claims and administrative requests for payment as timely filed, or otherwise permit the late-filing of such claims, or otherwise hold that such claims are not subject to discharge in this bankruptcy.

Dated:  May 5, 2026

Respectfully Submitted,

by:    /s/ Ryan P. McCarthy
        Ryan P. McCarthy (219022016)
        James E. Goodley (048572013)
        **GOODLEY McCARTHY LLC**
        One Liberty Place
        1650 Market Street, Suite 3600
        Philadelphia, PA 19103
        Telephone: (215) 394-0541
        james@gmlaborlaw.com
        ryan@gmlaborlaw.com
        james@gmlaborlaw.com

*Attorneys for WARN Creditors*

15