**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
R. Edward Stone III, Esq.
Tel: (973) 533-0777
Fax: (973) 814-4045
Dstolz@genovaburns.com
Rstone@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
*Local Counsel for Murray Avenue Market*

and -

**WH BURKLEY, LLP**
Kirk B. Burkley, Esq. (pro hac) PA Bar ID 89511
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
(412) 456-8100 Telephone
(412) 456-8135 Facsimile
E-Mail kburkley@bernsteinlaw.com
*Counsel for Murray Avenue Market*

Case No. 25-14831-MBK

Chapter 11

Hon. Michael B. Kaplan

Hearing Date:

In Re:

LAKEHURST AND BROADWAY
CORPORATION,

         Wind-Down Debtors.

## MOTION TO ENFORCE SETTLEMENT

Murray Ave Market, LLC ("Market" or "Movant"), by and through its undersigned counsel, hereby files this *Motion to Enforce Settlement* (the "Motion"), averring in support the following:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. 1700 Murray Avenue, LLC ("1700 Murray") was the owner the Property located at 1700-1710 Murray Avenue and 1712-1714 Murray Avenue, Pittsburgh, Pennsylvania 15217.

4. The Debtor, then Rite Aid of Pennsylvania, Inc. ("Rite Aid") leased the Property at location Rite Aid Store No. 274.

5. On July 22, 2025, the New Rite Aid Debtors designated the Lease for intended assumption and assignment by identifying Market as the successful bidder/assignee (the "Notice"). *See* Doc. No. 1525, Bankruptcy Case No. 25-14861-MBK.

6. On August 5, 2025, AmeriServ filed an objection to the Notice arguing that Market could not provide adequate assurance of future performance under the terms of the Lease. *See* Doc. No. 1805, Bankruptcy Case No. 25-14861-MBK.

7. On August 28, 2025, in response to AmeriServ's objection, Market filed its declaration of Yitzchok Glassner in support of the Lease assumption and assignment along with its market business plan (the "Declaration"). *See* Doc. No. 2194 & 2194-1, Bankruptcy Case No. 25-14861-MBK.

8. At all relevant times during the New Rite Aid Bankruptcy Case proceedings, Market stated that it intended to pursue such an acquisition and relocation of MAKI.

9. On September 18, 2025, this Honorable Court overruled AmeriServ's objections to the proposed assumption and assignment of the Lease and granted the assignment of the Lease to Market (the "Assignment Order"). *See* Doc. Nos. 2494, Bankruptcy Case No. 25-14861-MBK.

10. In or around October 2025, AmeriServ alleges that it received information indicating that, in the process of providing financial information to this Honorable Court, Market

utilized the tax returns, profit and loss statement, and other financial documents of MAKI. *See* Exhibit A, ¶ 25 of Joint Motion of Receiver and AmeriServ for Order of Court Approving Amended Sale Agreement, GD-24-003188 in the Court of Common Pleas of Allegheny County, Pennsylvania.

11.     Upon information and belief, this described exchange of information was actually the concerted effort of AmeriServ and 29 Katz Crew to contact MAKI and attempt to interfere with and block the sale of MAKI to Market.

12.     At all relevant times, AmeriServ and 29 Katz Crew knew, or should have known, that Market was in the process of consummating a transaction for the sale of MAKI.

13.     As such, Market believes that it now holds claims against AmeriServ and 29 Katz Crew for intentional interference with prospective contractual relations and civil conspiracy along with violations of relevant nondisclosure agreements (the "Claims") under Pennsylvania law.

14.     Moreover, Market has made timely monthly rent payments, and, as of the date of this Objection, is not in default under the terms of the Lease. Both 29 Katz Crew, and AmeriServ before it, have accepted Market's lease payments.

15.     Upon information and belief, after improperly interfering with Market's post-Lease assumption negotiations with MAKI, 29 Katz Crew filed its *Motion re: to Vacate Order Approving the Assumption and Assignment of Unexpired Lease to Murray Ave Market, LLC Pursuant to Fed. R. Civ. P. 60(B) and Fed. R. Bankr. P. 9024* (the "Rule 60(b) Motion") otherwise collaterally attacking the Assignment Order. *See* Doc. No. 245, Bankruptcy Case No.  25-14831-MBK.

16.     On March 3, 2026, Market filed an objection to the Rule 60(b) Motion (the "Objection"). *See* Doc. No. 294, Bankruptcy Case No.  25-14831-MBK.

17.     On March 19, 2026, the Court held a hearing to consider the Rule 60(b) Motion and

the Objection.

18.     At the March 19, 2026 hearing, counsel for Market and 29 Katz Crew reported to the Court that they would seek mediation in an effort to resolve the Rule 60(b) Motion and the Objection.

19.      On April 15, 2026, Market and 29 Katz Crew conducted an all-day mediation ("Mediation") with John M. Steiner acting as mediator ("Mediator").

20.     After a full day of mediation, 29 Katz Crew and Market reached agreement to resolve the Rule 60(b) Motion and any remaining disputes related to assumption of the Lease.

21.     The agreement of 29 Katz Crew and Market at the Mediation was memorialized in a signed term sheet (the "Term Sheet") witnessed and facilitated by the Mediator. A true and correct copy of the Term Sheet is annexed hereto as Exhibit A.

22.     The Term Sheet included, *inter alia*, the covenant that 29 Katz Crew would "fully cooperate with [Market] with respect to the opening of the kosher market, including but not limited to, attending zoning and permit hearings in support of Market."

23.     Instead of compliance with the Term Sheet, 29 Katz Crew inserted in proposed Lease Amendments new terms, and terms completely contrary to the Term Sheet.

24.     On May 6, 2026, amidst robust and good faith attempts by Market to finalize, *inter alia*, a settlement agreement, Lease amendment and guaranty with 29 Katz Crew, counsel for 29 Katz Crew communicated to counsel for Market that

> In the event we are unable to come to a resolution today, my client intends to send a new notice of default to the tenant. Absent execution of these documents, my client also reserves its right to continue with its opposition to the Application to Special Exception before the [zoning board] tomorrow.

25.     As a consequence of 29 Katz Crew's attempts to coerce Market's consent to a

materially different agreement than the Term Sheet, Market must now seek to enforce the Term Sheet and seek attorneys' fees and sanctions to ensure the integrity of the mediated settlement.

## RELIEF REQUESTED

26.     Market requests that this Court compel 29 Katz Crew to honor its obligations under the Term Sheet and find that the Term Sheet, which resulted from a Court-ordered mediation, is a binding agreement under Pennsylvania law.

27.     Market further requests that this Court grant attorneys' fees and sanctions to dissuade further unacceptable action by 29 Katz Crew in contravention to the agreement memorialized by the Term Sheet.

## ARGUMENT

28.     The Term Sheet is unambiguous and was memorialized pursuant to an arms-length negotiation supervised by a mediator, constituting a binding contract. *See In re BG Petroleum, LLC*, 525 B.R. 260, 270 (Bankr. W.D. Pa 2015) (Court found term sheet to be a binding agreement, stating, "[u]nder Pennsylvania law, [i]f parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date") (citations omitted); and *Ismail v. Interstate Res. Inc*, 842 F. App'x 821, 824 (3d Cir. 2021) (applying Pennsylvania law) ("An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, and even in the absence of a writing") (citations omitted).

29.     Courts have shown its reluctance to disturb settlements achieved through mediation. *See In re BG Petroleum, LLC*, 525 B.R at 270 ("settlements are strongly encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the litigation load of the courts… Settlement agreements reached through mediation are as binding as

those reached through litigation"); and *Ferrone v. RPP, LLC (In re RPP, LLC)*, 547 B.R. 158 (Bankr. W.D. Pa. 2016) (The Court found a settlement agreement achieved through mediation to be fully binding and enforceable where the parties' intent to be bound was placed unequivocally on the record, and the Court rejected post-mediation attempts to reinterpret or evade its terms as the objections "appeared to be in the nature of 'buyers' remorse'").

30.     Additionally, "[s]ettlement agreements are to be interpreted as binding contracts… Thus, settlement agreements are construed according to traditional principles of contract law." *In re BG Petroleum, LLC*, 525 B.R at 270. *See also Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 361 (3d Cir. 2003) (quoting *Republic Ins. Co. v. Davis Systems of Pittsburgh South, Inc.*, 670 A.2d 614, 615 (Pa. 1995)) ("the effect of a release is to be determined by the ordinary meaning of its language").

31.     Therefore, the Term Sheet, which was achieved through the court-ordered Mediation, is enforceable.

32.     Moreover, the Term Sheet requires 29 Katz Crew to perform. *See Pineo v. Turner (In re Turner)*, 274 B.R. 675, 680 (Bankr. W.D. Pa 2002) ("absent actual or constructive fraud, a settlement agreement is binding as between the parties pending the required bankruptcy court approval") (citations omitted).

33.     The Term Sheet neither contemplates revocation nor permits subsequent future repudiation by any party. *Ismail*, 842 F. App'x at  824 (applying Pennsylvania law).

34.     Therefore, in absence of justifiable grounds to negate the Term Sheet, 29 Katz Crew must be bound by its terms accordingly.

35.      29 Katz Crew's actions in violating the Term Sheet have been, and are, unreasonable and should not go unpunished.

36.     Moreover, under the circumstances, the Court can and should award Market for the reasonable attorneys' fees and costs incurred in seeking to enforce the Term Sheet. *Hall v. Cole*, 412 U.S. 1, 5 (1973) (holding "that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons'").

## **CONCLUSION**

37.     For the reasons stated above, the Term Sheet is a binding agreement. As such, Market respectfully requests that this Court enter an order enforcing the Term Sheet along with costs incurred including, but not limited to, attorneys' fees.

WHEREFORE, Market respectfully requests this Court to grant this *Motion to Enforce Settlement*, and to (i) enforce the terms of the Term Sheet as executed by the parties; and (ii) grant any other relief the Court deems just and proper.

Respectfully Submitted,

By:     */s/ Daniel M. Stolz*
**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
R. Edward Stone III, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Fax:         (973) 533-1112
Email:  Dstolz@genovaburns.com
        Rstone@genovaburns.com
*Local Counsel for Murray Ave Market, LLC*


By:    */s/ Kirk B. Burkley*
**WH BURKLEY, LLP**
Kirk B. Burkley, Esq. PA ID 89511
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Telephone:  412-456-8100
Fax:         412-456-8135
Email: kburkley@bernsteinlaw.com
*Attorney for Murray Ave Market, LLC*