| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz, Esq.<br>Ross J. Switkes, Esq.<br>308 Harper Drive, Suite 200<br>Moorestown, NJ  08057<br>Tel: (856) 662-0700<br>aabramowitz@shermansilverstein.com<br>rswitkes@shermansilverstein.com<br><br>*Local Counsel to the RAD Sub-Trust B* | **MCKOOL SMITH**<br>Kyle A. Lonergan, Esq.<br>James H. Smith, Esq.<br>1301 Avenue of the Americas,<br>32nd Floor<br>New York, NY  10019<br>Tel: (212) 402-9425<br>klonergan@mckoolsmith.com<br>jsmith@mckoolsmith.com<br><br><br>*Co-Counsel to the RAD Sub-Trust B* |
| **GILBERT LLP**<br>Kami E. Quinn, Esq.<br>Daniel I. Wolf, Esq.<br>Beth Koehler, Esq.<br>700 Pennsylvania Avenue, SE<br>Suite 400<br>Washington, DC  20003<br>Tel: (202) 772-2336<br>quinnk@gilbertlegal.com<br>wolfd@gilbertlegal.com<br>koehlerb@gilbertlegal.com<br><br>*Co-Counsel to the RAD Sub-Trust B* | |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>LAKEHURST AND BROADWAY<br>CORPORATION, *et al.*,<br><br>Wind-Down Debtors.[1] | Chapter 11<br><br>Case No. 25-14831 (MBK) |

**RITE AID SUB-TRUST B'S RESPONSE TO MARSHELL LANDRUM'S
MOTION TO ENFORCE COURT ORDER, COMPEL ASSIGNMENT OF
INSURANCE RIGHTS, AND FOR SANCTIONS**

The Rite Aid Sub-Trust B (the "Sub-Trust B"), through Alan D. Halperin, Esq., as Trustee

of the Rite Aid Sub-Trust B, and by and through its undersigned counsel, responds to Movant,

Marshell Landrum's Motion to Enforce Court Order, Compel Assignment of Insurance Rights, and

for Sanctions filed on April 27, 2026, Dkt. No. 390 (the "Motion"), and states the following:

**FACTUAL AND PROCEDURAL BACKGROUND**

1.      On October 15, 2023, Rite Aid Corporation and certain of its subsidiaries

(collectively, the "Debtors") filed for protection under Chapter 11 of Title 11 of the United States

Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New

Jersey. *See* Case No. 23-18993, Dkt. No. 1.

2.      On August 16, 2024, this Court entered its Order Approving the Disclosure

Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Rite

Aid Corporation and Its Debtor Affiliates (With Further Modifications), Case No. 23-18993, Dkt.

---

[1] On December 30, 2025, the Court entered the *Order Granting Debtors' Motion for Final Decree Closing Certain of the Chapter 11 Cases in New Rite Aid, LLC, et al.*, closing all cases listed therein except for the above captioned Debtor [Case No. 25-14861 (MBK), Docket No. 3695] (the "Order on Final Decree"). The Court has entered a text order on the affiliated dockets listed in the Order on Final Decree requiring that all remaining matters be filed under the above captioned case, *Lakehurst and Broadway Corporation*, Case No. 25-14831 (MBK).

4532 (the "Confirmation Order"). On August 30, 2024 (the "Effective Date"), the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates (With Further Modifications) (the "Plan") was consummated.

3.     On the Effective Date, Debtors transferred, granted and assigned to the Litigation Trust the Assigned Insurance Rights (as defined in the Plan). Case No. 23-18993, Dkt. No. 4532. In turn, the Sub-Trust B Agreement "create[d] and establishe[d] Sub-Trust B referenced herein in order to facilitate the implementation of the [Plan]," transferred "the Assigned Insurance Rights to the Master Trust, solely for the purpose of further assigning such rights to Sub-Trust A and Sub-Trust B, as applicable," and provided for "the prosecution, settlement, and/or monetization by the Sub-Trust B Trustee of Assigned Insurance Rights for Tort Claims pursuant to the Plan."[2] Case No. 23-18993, Dkt. No. 4793.[3] In short, the Assigned Insurance Rights for Tort Claims were transferred to Sub-Trust B to pursue and monetize.

4.     New Rite Aid and its affiliates filed for bankruptcy again on May 5, 2025, and on June 9, 2025, Movant filed an Emergency Motion for Relief from Automatic Stay to Pursue Wrongful Death Claims Against Insurers in the new bankruptcy cases, Case No. 25-14861, Dkt.

---

[2] "Assigned Insurance Rights" include "any and all rights, titles, privileges, interests, claims. . . of the Debtors and/or or any Holder of Tort Claims to any and all proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity arising under, or attributable to, any and all Insurance Policies, now existing or hereafter arising, accrued, or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including those arising under or attributable to any and all commercial general liability policies . . . but in all cases excluding the Unassigned Insurance Rights." "Tort Claims" means "a Claim made on or before the Effective Date (other than Claims or Causes of Action arising from violations of the automatic stay or any injunction entered by the Bankruptcy Court in connection with the Chapter 11 Cases) based in whole or in part on any alleged tortious act or omission by any Debtor and/or arising out of, relating to, or in connection with any Product, but not including, for the avoidance of doubt, claims for indemnification, contribution, or reimbursement on account of payments or losses in any way arising out of, relating to, or in connection with any such conduct or circumstances and Co-Defendant Claims. For the avoidance of doubt, Tort Claims do not include (i) any liability solely to the extent premised on allegations regarding conduct undertaken by the Reorganized Debtors after the Effective Date or (ii) any Claims arising under section 502(h) of the Bankruptcy Code.

[3] *See also* Master Trust Agreement at 2 ("Pursuant to the Plan, as of the Effective Date, the Master Trust. . . shall irrevocably vest, transfer, assign, and deliver, and shall be deemed to have vested, transferred, assigned and delivered, to the Sub-Trust B, without recourse, all of their respective rights, title, and interest in the Sub-Trust B Assigned Insurance Rights. . .").

No. 801 ("Stay Relief Motion").[4]  On July 21, 2025, the Court granted in part the Stay Relief Motion, ordering limited relief from the automatic stay to "permit Movant to pursue all rights with respect to 'Unassigned Insurance Policies'" and "to seek assignment of insurance rights from the Litigation Trust, subject to the provisions of the confirmed Plan" with regard to tort claims alleging that the Debtors' conduct in dispensing Promethazine caused her father's passing.  Order Granting in Part, Limited Relief from Automatic Stay, ¶ 2, Case No. 25-14861, Dkt. No. 1511; Stay Relief Motion ¶¶ 1–3.[5]

5.      Movant asserts that on March 16, 2026, she sent letters to the Litigation Trust at the following addresses: (1) Kurtzman Carson Consultants LLC, 222 North Pacific Coast Highway, Suite 3000, El Segundo, California 90245, and (2) 850 Third Avenue, Suite 412, Brooklyn, New York 11232.[6] Motion ¶¶ 3–4.  Neither address is the address of Sub-Trust B (or, to Sub-Trust B's knowledge, of the Litigation Trust or any of the other sub-trusts), and Sub-Trust B was unaware of these letters or any attempts by Movant to contact Sub-Trust B until the filing of this Motion.

6.      On May 6, 2026, Movant filed this Motion seeking, as relevant to Sub-Trust B, "assignment of insurance rights from the Litigation Trust."  Case No. 25-14861, Dkt. No. 1511; Case No. 25-14831, Dkt. No. 390.[7]

---

[4] Additionally, in April 2025, Movant filed a Notice of Motion and Motion for Relief from Discharge Injunction to Pursue Wrongful Death Claim Against Rite Aid Corporation in State Court, Dkt. No. 5848.

[5] The Court also authorized Movant to file a late proof of claim with respect to Case No. 23-18993 and rejected Movant's arguments that her claim was non-dischargeable under Bankruptcy Code § 523(a)(6).

[6] An October 28, 2025, communication, attached to the Motion as an exhibit, appears to have been sent to the same New York address.

[7] Movant also seeks assignment of "Unassigned Insurance Policies," which was previously ordered on July 21, 2025. Case No. 25-14861, Dkt. No. 1511; Case No. 25-14831, Dkt. No. 390. As the "Unassigned Insurance Policies" were not assigned to Sub-Trust B, Sub-Trust B does not take any position with respect to this request.  Sub-Trust B will likewise not address Movant's request that this Court consider whether Debtors' counsel should face sanctions.

**ARGUMENT**

7.      Movant seeks an "assignment of insurance rights from the Litigation Trust" pursuant to this Court's July 21, 2025 order and the Plan.  While the Plan documents give Sub-Trust B the power to assign certain insurance rights to individual tort claimants, they place no obligation on Sub-Trust B to do so and instead put important restrictions on Sub-Trust B's ability to assign such rights.  For instance, in considering any request for an assignment of insurance rights, Sub-Trust B must prioritize maximizing recoveries for *all* beneficiaries and avoiding any assignment that would interfere with that goal.  Here, the express purpose of Sub-Trust B and the provisions vesting in it the power to pursue and liquidate claims is best accomplished by Sub-Trust B maintaining exclusive rights to the Assigned Insurance Rights for Tort Claims.

8.      As detailed above, the Plan vests all Assigned Insurance Rights in the Master Trust (referred to in the Plan as the Litigation Trust) and the Master Trust further assigns such insurance rights for Tort Claims to Sub-Trust B.  These rights were not assigned to the Movant in the Court's Order of July 21, 2025, which assigned *Unassigned* Insurance Rights.

9.      The Plan and Confirmation Order also provide that Sub Trust B has "the power to assign and/or transfer Assigned Insurance Rights for Tort Claims to Holders of Allowed Tort Claims, subject to reasonable restrictions so as not to interfere with, increase costs to, or impede the efforts of, the Litigation Trust, as further described in the Litigation Trust documents." Confirmation Order at 61, Case No. 23-18993, Dkt. 4532; *see also* Plan Art. IV.E.3(a).  The Plan documents further state that any assignment is subject to Sub-Trust B's obligation to "exercise reasonable business judgment and liquidate the Sub-Trust B Assets to maximize net recoveries to the Sub-Trust B Beneficiaries" and do so in an "expeditious but orderly manner." Sub-Trust B Agreement at 23.  In other words, any assignment is within Sub-Trust B's sole discretion and

- 4 -

should be permitted only if Sub-Trust B is satisfied that the assignment comports with its duties to all claimants.

10.     Here, assigning insurance rights to Movant (or another individual claimant) would "interfere with" and "impede the efforts" of Sub-Trust B to maximize recovery for the broader group of tort claimants.  Sub-Trust B was created to pursue the Assigned Insurance Rights on behalf of a broad group of thousands of opioid claimants and other tort claimants, and in exercising its reasonable business judgment has concluded the most efficient way to do so is through a single litigation against the Debtors' insurers managed by Sub-Trust B and its counsel.  Allowing individual claimants to pursue separate actions against these insurers could create a rush to the courthouse, cause insurance proceeds to be distributed unevenly among similarly situated claimants, impose additional delays and costs on Sub-Trust B, and complicate any potential resolutions with insurers.

11.     Such an outcome would be inconsistent with not only the Plan documents, but also the Bankruptcy Code.  The Bankruptcy Code allows for the creation and establishment of trusts such as Sub-Trust B to efficiently and finally resolve the claims of large groups of mass tort claimants in a fair and orderly manner. *See, e.g., In re W.R. Grace & Co.*, 475 B.R. 34, 91 (D.Del. 2012) (describing the purpose of a post-bankruptcy statutorily created asbestos litigation trust as to "preserve and facilitate the resolution of current asbestos claims, while simultaneously relieving the insolvent debtor from the uncertainty associated with impending future asbestos litigation"). Assuring equality and fairness of treatment among similarly situated claimants is one of the main goals of bankruptcy law.  *See, e.g., Begier v. I.R.S.*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."); *cf. Harrington v. Purdue Pharma*, 144 S. Ct. 2071, 2088 (2024) (Kavanaugh, J., dissenting) ("Bankruptcy seeks to

. . . prevent a race to the courthouse by individual creditors who, if successful, could obtain all of a company's assets, leaving nothing for all the other creditors.").[8]

12.     For the reasons set forth above, Sub-Trust B respectfully requests that the Court deny the Motion as to Movant's request for "assignment of insurance rights from the Litigation Trust."

Dated: June 2, 2026

By: */s/ Arthur J. Abramowitz*

**SHERMAN, SILVERSTEIN,
KOHL, ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

**MCKOOL SMITH**
Kyle A. Lonergan, Esq.
James H. Smith, Esq.
1301 Avenue of the Americas32nd Floor
New York, NY  10019
Tel: (212) 402-9400
klonergan@mckoolsmith.com
jsmith@mckoolSmith.com

---

[8] In response to Movant's request for costs, the Court should reject this request as to Sub-Trust B, as Movant's letters were not sent to any address associated with the Trust and the Trust was unaware of these letters or any attempts by Movant to contact Sub-Trust B until the filing of this Motion.

**GILBERT LLP**
Kami E. Quinn, Esq.
Daniel I. Wolf, Esq.
Beth A. Koehler, Esq.
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Tel: (202) 772-2336
quinnk@gilbertlegal.com
wolfd@gilbertlegal.com
koehlerb@gilbertlegal.com

*Co-Counsel to the RAD Sub-Trust B*