**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
David M. Bass, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com

*Counsel to the Liquidating Trustee and the Wind-Down Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LAKEHURST AND BROADWAY CORPORATION,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 25-14831 (MBK) |

**LIQUIDATING TRUSTEE'S OBJECTION TO MOTION TO ENFORCE COURT ORDER, COMPEL ASSIGNMENT OF INSURANCE RIGHTS AND FOR SANCTIONS**

Eric Kaup, the RAD Liquidating Trustee (the "Liquidating Trustee"), on behalf of the RAD

Liquidating Trust (the "Liquidating Trust") and the above-captioned debtor and the other Wind-

Down Debtors (collectively, the "Wind-Down Debtors", and prior to the Effective Date, the

---

[1]    On December 30, 2025, the Court entered the *Order Granting Debtors' Motion for Final Decree Closing Certain of the Chapter 11 Cases in New Rite Aid, LLC, et al.*, closing all cases listed therein except for the above captioned Debtor [Case No. 25-14861 (MBK), Docket No. 3695] (the "Order on Final Decree").  The Court has entered a text order on the affiliated dockets listed in the Order on Final Decree requiring that all remaining matters be filed under the above captioned case, *Lakehurst and Broadway Corporation*, Case No. 25-14831 (MBK).  Except as otherwise provided herein, references to the "Docket" herein shall refer to the docket in the formerly jointly administered cases captioned *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK).

"Debtors")[2] in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), files this objection (this "Objection") to the *Motion to Enforce Court Order, Compel Assignment of Insurance Rights, and for Sanctions* [Case No. 25-14831, Docket No. 390] (the "Motion") filed by Marshell Landrum ("Landrum"), in her capacity as personal representative of the estate of Michael W. Landrum, seeking enforcement of the Limited Stay Relief Order (defined below) and sanctions, and in response thereto, the Liquidating Trustee respectfully states as follows:

1.      The Motion filed by Landrum is fundamentally flawed and lacks any factual or legal basis. The Motion rests on a complete misunderstanding of both the relief granted by this Court in the Limited Stay Relief Order and the terms of the 2023 Rite Aid Plan (each defined below). As a result of this misunderstanding, Landrum seeks relief in these Chapter 11 Cases for which there is no legal basis. Moreover, Landrum has failed to identify any grounds upon which the Court could even consider imposing sanctions against the Liquidating Trustee's counsel, Cole Schotz P.C. ("Cole Schotz").

**PROCEDURAL BACKGROUND**

2.      On May 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the District of New Jersey (the "Court").  From the Petition Date through the Effective Date (defined below) of the 2025 Rite Aid Plan, the Debtors remained in possession of their assets and continued to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and its Debtor Affiliates (Technical Modifications)* [Docket No. 3445, Ex. A] (as confirmed, the "2025 Rite Aid Plan").

3.       On November 26, 2025, the Court entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3445], confirming the 2025 Rite Aid Plan and on December 15, 2025, entered its *Supplemental Order to Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 3536].

4.       The 2025 Rite Aid Plan became effective on December 31, 2025 (the "Effective Date").  *See Notice of (A) Entry of the Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC (Technical Modifications) and Its Debtor Affiliates and (II) Occurrence of the Effective Date* [Docket No. 3699].  On the Effective Date, the Liquidating Trust was established pursuant to the terms of the 2025 Rite Aid Plan and the terms of that certain Liquidating Trust Agreement (the "Trust Agreement") under which the Liquidating Trustee became the sole representative of the Wind-Down Debtors. *See* 2025 Rite Aid Plan, Art. VII. and Trust Agreement, Art. II.

## THE LIMITED STAY RELIEF ORDER

5.       During the course of these Chapter 11 Cases, on June 9, 2025, Landrum filed *Movant's Emergency Motion for Relief from Automatic Stay to Pursue Wrongful Death Claim Against Insurers* [Docket No. 801] (the "Stay Relief Motion") seeking relief from the automatic stay in these Chapter 11 Cases to pursue the liability insurance coverage of Landrum's alleged claim against the Debtors.

6.       On June 23, 2025, the Debtors filed the *Debtors' Omnibus Opposition to Motions Seeking Relief to Lift the Automatic Stay* [Docket No. 1059] ("Debtors' Stay Relief Objection"), explaining that Landrum's alleged claim is subject to the 2023 Rite Aid Plan (defined below)

confirmed in the Debtors' prior chapter 11 proceedings and is not subject to these Chapter 11 Cases.  On June 20, 2025, Landrum filed her *Reply Brief in Support of Motion for Relief from Automatic Stay* [Docket No. 1170].

7.      On July 21, 2025, the Court entered the *Order Granting, in Part, Limited Relief from Automatic Stay* [Docket No. 1511] (the "Limited Stay Relief Order").   The Limited Stay Relief Order granted Landrum limited relief solely to permit Landrum to pursue any rights she may have against the "Unassigned Insurance Policies" under the 2023 Rite Aid Plan and to seek assignment of other insurance rights from the trust created thereunder, subject to the terms of the 2023 Rite Aid Plan. *See* Limited Stay Relief Order, ¶ 2.

### THE 2023 RITE AID CASES[3]

8.       Prior to the commencement of these Chapter 11 Cases, on October 15, 2023, Rite Aid Corporation and certain of its subsidiaries filed cases under Chapter 11 of the Bankruptcy Code before this Court, which were jointly administered under the lead case, *In re Rite Aid Corp.*, Case No. 23-18993 (Bankr. D.N.J.) (the "2023 Cases"). The debtors in the 2023 Cases (the "2023 Debtors") are largely the same debtor entities in these Chapter 11 Cases.

9.      On August 16, 2024, the Court in the 2023 Cases entered the *Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and its Debtor Affiliates (with Further Modifications)* [2023 Cases, Docket No. 4532] (the "2023 Confirmation Order"), confirming the 2023 Debtors' chapter 11 plan of reorganization [2023 Cases, Docket No. 4532, Ex. A] (the "2023 Rite Aid Plan").

---

[3]     Capitalized terms used but not otherwise defined in this section shall have the meanings given to them in the 2023 Rite Aid Plan (defined below).

10. On August 30, 2024, the Effective Date of the 2023 Rite Aid Plan occurred (the "2023 Effective Date") and the 2023 Debtors emerged from Chapter 11 [2023 Cases, Docket No. 4800].

11. On the 2023 Effective Date, various trusts, were established for the benefit of Holders of Allowed General Unsecured Claims (including Tort Claims, such as the claim alleged by Landrum). *See* 2023 Rite Aid Plan, Art. IV.E.[4]

12. The 2023 Rite Aid Plan, and the associated Litigation Trust Agreement provide for the transfer of the Litigation Trust Assets, including "Assigned Insurance Rights",[5] to the Litigation Trust created thereunder (the "2023 Trust"). *See* 2023 Rite Aid Plan, Art. IV. E.3.a.  The 2023 Trust's interest in the Litigation Trust Assets vested upon the 2023 Effective Date. *See* 2023 Rite Aid Plan, Art. IV.E.3.b.

13. The "Assigned Insurance Rights" are defined as follows:

> [C]ollectively, any and all rights, titles, privileges, interests, claims, demands or entitlements, as well as obligations, of the Debtors and/or any Holder of Tort Claims to any and all proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity arising under, or attributable to, any and all Insurance Policies, now existing or hereafter arising, accrued, or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including those arising under or attributable to any and all commercial general liability policies, punitive damages policies, products liability policies, life sciences policies, D&O Liability Insurance Policies, and any of the Debtors' rights under any third parties' policies, but in all cases excluding the Unassigned Insurance Rights. . . .

---

[4] The 2023 Rite Aid Plan defines a "Tort Claim", in relevant part, as "a Claim . . . based in whole or in part on any alleged tortious act or omission by any Debtor and/or arising out of, relating to, or in connection with any Product." 2023 Rite Aid Plan, Art. I.A.204

[5] *See* 2023 Rite Aid Plan., Art. I.A.74.

2023 Rite Aid Plan, Art. I.A.43.[6]

14. The "Unassigned Insurance Rights", which were not assigned to the 2023 Trust,

are, generally, the rights to the "Unassigned Insurance Policies", which are defined as:

> (a) the Property Insurance Policies, (b) the Casualty Insurance
> Policies, (c) the Cyber Insurance Policies, (d) any Insurance Policy
> reasonably necessary to operate the Reorganized Debtors' business
> (or any proceeds recovered in connection with the operation of the
> Reorganized Debtors' business), (e) any Insurance Policy issued to
> McKesson under which any Debtor is designated as an additional
> insured party, and (f) any Insurance Policy purchased to maintain
> the insurance covenant in any Exit Facilities Documents, the Exit
> 1.5 Lien Notes Documents, the Takeback Notes Documents, or
> documents necessary to effectuate any security interests agreed to
> be granted to McKesson in connection with the McKesson
> Settlement.

2023 Rite Aid Plan, Art. I.A. 211 and 212.

15. Further, with regard to Tort Claims, paragraph 23 of the Confirmation Order

provides as follows:

> Notwithstanding anything to the contrary in the Plan or in this
> Confirmation Order, and for the avoidance of doubt, the Debtors
> shall not be released from liability for any Tort Claims; *provided,
> however*, **that any recovery for any such Tort Claim against the
> Debtors (or their Affiliates), including by way of settlement or
> judgment, shall be limited to the Litigation Trust Assets** and
> shall in no circumstances extend to the Reorganized Debtors or the
> Wind Down Debtors, and no Person, Entity, or other party shall
> execute, garnish, or otherwise attempt to collect any recovery on
> account of a Tort Claim from any assets other than the Litigation
> Trust Assets and the GUC Equity Pool, except to the extent and only
> as necessary to trigger any insurance carrier's obligation to pay such
> liability.

2023 Confirmation Order ¶ 23 (emphasis added).

---

[6]    The 2023 Rite Aid Plan defines "Insurance Policies" to include "commercial general liability policies." 2023
Rite Aid Plan, Art. I.A.50.

16.     The 2023 Rite Aid Plan also contains a "Channeling Injunction" which channels Tort Claims away from the Debtors and the Reorganized Debtors, *see generally* Plan, Art X.G., but also reserves "the rights of Holders of Tort Claims *to the treatment afforded them under the Plan and the Definitive Documents, including the rights of Holders of Tort Claims to assert such Tort Claims in accordance with the Plan and the Litigation Trust Documents*." 2023 Rite Aid Plan, Art. X.G.1 (emphasis added).

17.     More generally, the 2023 Rite Aid Plan's injunction provision states that "all Entities who have held, hold or may hold Claims or Interests that have been released . . . are permanently enjoined, from and after the Effective Date, from . . . commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with such Claims or Interests [against the Reorganized Debtors]." 2023 Rite Aid Plan, Art. X.F.

## REPLY

**I.     The Debtors and the Liquidating Trustee Have Not Violated the Limited Stay Relief Order, and Landrum's Request to Enforce the Limited Stay Relief Order Should Be Denied**

18.     Landrum fundamentally misunderstands the relief granted in the Limited Stay Relief Order. That order provided relief solely to permit Landrum to pursue her rights, if any, against the Unassigned Insurance Policies and to seek assignment of the Assigned Insurance Rights from the 2023 Trust, subject to the terms of the 2023 Rite Aid Plan. *See* Limited Stay Relief Order, ¶ 2.

19.     As set forth above, the Unassigned Insurance Policies *do not* provide coverage for the type of Tort Claims asserted in the Motion. Rather, any insurance policies covering such claims fall within the Assigned Insurance Rights, which were expressly transferred to the 2023 Trust pursuant to the terms of the 2023 Rite Aid Plan. In addition, Landrum's sole recovery with respect

7

to such claims is limited to the Litigation Trust Assets under the 2023 Rite Aid Plan. *See* 2023 Confirmation Order, ¶ 23.

20. Although limited stay relief has been granted by the Court to allow Landrum to *seek* assignment of insurance rights from the 2023 Trust, such relief is expressly subject to the 2023 Rite Aid Plan.

21. Notwithstanding the clear terms of the Limited Stay Relief Order and 2023 Rite Aid Plan, Landrum continues to direct correspondence exclusively to Kroll Restructuring Administration LLC ("Kroll") and Cole Schotz. While Kroll remains the claims and noticing agent in the 2023 Rite Aid Cases, Cole Schotz does not serve, and has never served, as counsel to the 2023 Trust. Similarly, Cole Schotz's clients, the Liquidating Trustee and Wind-Down Debtors in these Chapter 11 Cases, have no control of or interest in the 2023 Trust. Landrum has nevertheless directed repeated demands to the Debtors' insurers, Kroll and Cole Schotz seeking relief with respect to insurance policies that were assigned to the 2023 Trust.

22. In an attempt to assist Landrum, Cole Schotz has repeatedly, both informally and in pleadings filed before this Court, explained to Landrum the limited scope of her potential recovery, the inapplicability of the Unassigned Insurance Policies to her claims, and the effect of the 2023 Rite Aid Plan on the Assigned Insurance Policies. *See* Debtors' Stay Relief Objection; *and see* Motion, Ex. C. Landrum's recourse, if any, is limited by and must be pursued in accordance with the terms of the 2023 Rite Aid Plan and the Limited Stay Relief Order.

## II. The Court Must Deny the Request for Sanctions

23. The Court must deny Landrum's request for sanctions against Cole Schotz. The asserted basis for sanctions is that Cole Schotz allegedly acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *See* Motion, § III.A (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32). That claim is unfounded. Notwithstanding Cole Schotz's attempts to advise Landrum of the limited

8

relief granted in the Limited Stay Relief Order and direct her to the 2023 Trust, she continued to reach out to Chubb Insurance and other insurers requesting information and relief that is in direct contravention of the Limited Stay Relief Order.  As a result, Cole Schotz was forced to demand that Landrum cease and desist from pursuing claims that were not granted by the Limited Stay Relief Order.  Landrum contends that such demand is interference with or a violation of the Limited Stay Relief Order.  That argument is simply wrong.  If anything, it is Landrum that has violated the terms of the Limited Stay Relief Order.

### **CONCLUSION**

For the foregoing reasons, the Liquidating Trustee respectfully requests that the Court deny the Motion and grant the Liquidating Trustee such other relief as is just and proper.

Dated:  June 2, 2026

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
David M. Bass, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com

*Counsel for the Liquidating Trustee and Wind-Down Debtors*