UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

TUCKER ARENSBERG, P.C.
Evan C. Pappas, Esquire
Michael A. Shiner, Esquire
Maribeth Thomas, Esquire
300 Corporate Center Drive, Suite 200
Camp Hill, Pennsylvania 17011
Telephone: (717) 234-4121
Fax: (717) 232-6802
epappas@tuckerlaw.com
mshiner@tuckerlaw.com
mthomas@tuckerlaw.com
*Counsel for 29 Katz Crew, LP*

| | |
|---|---|
| In re: | Case No. 25-14831-MBK |
| LAKEHURST AND BROADWAY CORPORATION. | Chapter 11 |
| Wind-Down Debtors. | Hon. Michael B. Kaplan |

## 29 KATZ CREW, LP'S RESPONSE TO MOTION TO ENFORCE SETTLEMENT

29 Katz Crew, LP ("**29 Katz**") files this *Response to Motion to Enforce Settlement* (the "**Response**").

## PRELIMINARY STATEMENT

After arguing that 29 Katz did not have standing to file, and this Court did not have jurisdiction to adjudicate, the *Motion to Vacate Order Approving the Assumption and Assignment of Unexpired Lease to Murray Ave Market, LLC Pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024* (the "**Rule 60(b) Motion**"), Murray Ave Market, LLC ("**MAM**") now asks this Court to enforce a settlement agreement that does not exist. The *Motion to Enforce Settlement* (the "**Motion to Enforce**") filed by MAM relies upon a term sheet from a mediation between 29 Katz and MAM (the "**Term Sheet**") that states in no uncertain terms that it is ***subject to the to the***

1

***execution of a definitive settlement agreement mutually acceptable to 29 Katz and MAM***.  MAM doesn't mention this fact to the Court and instead asserts that the Term Sheet constitutes a binding settlement agreement that should be enforced.  This argument fails, and the Motion to Enforce must be denied.

## BACKGROUND

1.      29 Katz understands that the Court is intimately familiar with the background of this matter.  As such, 29 Katz incorporates the procedural and factual background as set forth in the Rule 60(b) Motion filed in this Bankruptcy Case at Doc. No. 45.

2.      After MAM filed a response to the Rule 60(b) Motion, the Court held a telephonic conference.  At that time, counsel indicated their willingness to engage in mediation.

3.      On April 15, 2026, 29 Katz and MAM engaged in a day long mediation (the "**Mediation**").

4.      As a result of the Mediation, the mediator drafted a term sheet containing certain terms for an agreement (the "**Term Sheet**").[1]  A copy of the Term Sheet is attached hereto and incorporated herein as **Exhibit A**.

5.      The Term Sheet expressly provides:

> After a full day of mediation, 29 Katz and MAM, reached agreement on their issues and disputes under the following terms and conditions (***all subject to the execution of a definitive settlement agreement mutually acceptable to 29 Katz and MAM***) . . . .

*See* Exhibit A, at 1 (emphasis added).

6.      Paragraph 8 of the Term Sheet expressly provided that certain issues remained "subject to review, negotiation, agreement and approval":

---

[1] While the Motion to Enforce, which was filed on May 29, 2026, purported to attach a copy of the Term Sheet as Exhibit A, MAM did not file the Term Sheet until June 4, 2026.

> [MAM AND 29 KATZ HAVE AGREED THAT AT THE CONCLUSION OF THE MEDIATION, SUBPARAGRAPH (ii) OF THIS PARAGRAPH 8 **REMAINS SUBJECT TO REVIEW, NEGOTIATION, AGREEMENT AND APPROVAL**. THE MEDIATION IS HELD OPEN ON THIS POINT AND IF 29 KATZ AND MAM CANNOT RESOLVE, THE MEDIATOR CAN ASSIST IN RESOLVIONG *[SIC]* IF 29 KATZ AND MAM SO AGREE].

*See* Exhibit A, at ¶ 8 (emphasis added).

7.     Finally, the Term Sheet concludes with the provision that "Final Agreement on the above terms and conditions are subject to (i) resolution of the issue identified in paragraph 8 above; and (ii) execution of a definitive settlement agreement." *See* Exhibit A, at 4.

8.     Negotiations continued between 29 Katz and MAM after the Mediation to resolve (i) the disputes regarding the ability of MAM to sell and/or assign the Lease; (ii) to agree to drafts of definitive documentation that included a Settlement Agreement, a Lease Amendment, and a Guaranty Agreement; and (iii) to resolve open deal term issues that were not addressed by the Term Sheet such as the details and scope of the right of first refusal, demands for restriction on alienation of less than the entire building, the confession of judgment provision in the guaranty, and the scope of the guaranty.

9.     29 Katz drafted a Settlement Agreement, a Lease Amendment, and a Guaranty Agreement after the conclusion of the Mediation. Counsel for the parties engaged in multiple communications and exchanged at least four drafts of the Settlement Agreement, Lease Amendment, and Guaranty Agreement.

10.    The parties never reached a meeting of the minds and never agreed on the form of the Settlement Agreement, Lease Amendment, and Guaranty Agreement. Accordingly, the parties did not and could not execute definitive settlement documents and have been unable to resolve their disputes.

3

11.     Instead of continuing negotiations, MAM pivoted to filing the Motion to Enforce

that:

a. Asserts that MAM holds claims against 29 Katz for "intentional interference with prospective contractual relations and civil conspiracy along with violations of relevant nondisclosure agreements (the "Claims") under Pennsylvania law." *Motion to Enforce* ¶ 13.

b. Claims that MAM "made timely rent payments" and "is not in default under the terms of the Lease" *Motion to Enforce* ¶ 14.

c. Asserts that 29 Katz engaged in a "concerted effort . . . to attempt to interfere with and block the sale of MAKI[2] to [MAM]". *Motion to Enforce* ¶ 11.

12.     Much of the Motion to Enforce ignores the Term Sheet and instead goes into great

detail about the disputes between non-Debtors 29 Katz and MAM.  This Court does not have

subject matter jurisdiction to decide these disputes between 29 Katz and MAM.

13.     After nearly 20 paragraphs describing the disputes between 29 Katz, MAM, and

other non-Debtor parties, MAM devotes a scant 4 paragraphs to alleging the existence of an

enforceable settlement as follows:

a. The parties executed a Term Sheet following a mediation. *Motion to Enforce* ¶ 21.

b. The Term Sheet required 29 Katz to cooperate with zoning and other efforts to open the market." *Motion to Enforce* ¶ 22.

c. That instead of complying with the Term Sheet, 29 Katz "inserted in proposed Lease amendments new terms, and terms completely contrary to the Term Sheet." *Motion to Enforce* ¶ 23.

d. In a gross misuse of Rule 408 privileged settlement communications, MAM mischaracterizes settlement communications as coercion. *Motion to Enforce* ¶¶ 24-25.

e. A generic statement that "29 Katz Crew inserted in proposed Lease Amendments new Terms, and terms completely contrary to the Term Sheet" without providing any details about the issues where the parties failed to reach a meeting of the minds.

---

[2] MAKI is Murray Avenue Kosher Inc. as more particularly identified in the Rule 60 Motion.

14.     And perhaps most egregiously given its failure to disclose the many issues not covered by the Term Sheet where MAM and 29 Katz failed to reach agreement, MAM failed to disclose to this Court in the Motion to Enforce that the Term Sheet itself (i) was subject to execution of a definitive settlement agreement acceptable to both parties; (ii) expressly provides that issues with respect to the assignability of the lease were not resolved and were still open; and (iii) that critical documentation remained open regarding multiple issues including but not limited to the scope of the Guaranty Agreement to be executed by the principals of MAM, inclusion of confessions of judgment in the Guaranty Agreement, the terms and conditions of the Right of First Refusal for the sale of the entire building, and the existence of paragraph 8(ii) reservation expressly contained in the Term Sheet.[3]

## ARGUMENT

I.     **The Court lacks subject matter jurisdiction to consider the Motion to Enforce and any purported settlement agreement between the parties.**

A.     **MAM previously argued that this Court lacks post-confirmation jurisdiction over disputes involving the Lease, 29 Katz and MAM.**

15.     In the *Objection of Murray Ave Market, LLC to the Motion to Vacate Order Approving Assumption and Assignment of Unexpired Lease Pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024* (the "**Rule 60(b) Objection**"), MAM argued that 29 Katz lacked standing to bring the Rule 60(b) Motion because it was not a party to the Lease assumption proceedings and

---

[3] In light of concerns regarding the applicability of Federal Rule of Evidence 408, 29 Katz has not attached drafts of the settlement documentation including the Settlement Agreement, the Lease Amendment, and the Guaranty Agreement. On the facts alleged in the Motion to Enforce, review of these documents should be unnecessary as the Motion to Enforce fails to plead a *prima facie* case for enforcement of a settlement because Term Sheet, by its terms in at least three separate places (the reservation of open issues in ¶8(ii) and the multiple caveats that the agreement is subject to "execution of a definitive settlement agreement mutually acceptable to 29 Katz and MAM), demonstrates the lack of a meeting of the minds and thus the lack of an enforceable settlement. If the Court should request, however, 29 Katz is prepared to file drafts of the Settlement Agreement, the Lease Amendment, the Guaranty Agreement, and related communications under seal.

that this Court lacked jurisdiction to adjudicate the Rule 60(b) Motion, because there was no close nexus between the relief sought and the objectives of the plan of liquidation.  See Doc. No. 294.

16.     The Court of Appeals holds that a bankruptcy court may retain jurisdiction over a claim post-confirmation only if such claim is "related to" a case under the Bankruptcy Code. *Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 405 (3d Cir. 2009) (citing 28 U.S.C. § 157(c)(1)).

17.     Under the argument in MAM's Rule 60(b) Objection, it must follow that this Court lacks jurisdiction to consider the Motion to Enforce because the dispute involves two non-Debtor entities and outcome of the dispute will have no conceivable effect upon the New Rite Aid bankruptcy cases.  *See, e.g.*, *Penson Techs. LLC v. Schonfeld Grp. Holdings LLC (In re Penson Worldwide, Inc.)*, 587 B.R. 6, 12 (Bankr. D. Del. 2018) ("Post-confirmation . . . bankruptcy jurisdiction over non-core proceedings narrow; it exists only if there is a 'a close nexus to the bankruptcy plan or proceeding.'"); *see also Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166-67 (3d Cir. 2004) ("related to" jurisdiction is dependent "whether there is a close nexus to the plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter").

18.     MAM fails to address the jurisdiction of the Court in its Motion to Enforce, *i.e.* whether this is a core or non-core matter and whether jurisdiction arises under 28 U.S.C. § 157(b).[4]

19.     MAM's own legal positions in the Opposition to Rule 60(b) Motion should preclude it from arguing that this Court now has jurisdiction to consider the Motion to Enforce. After all, how could this Court have jurisdiction over the Motion to Enforce if it didn't have

---

[4] In fact, in the section of MAM's Motion to Enforce entitled "Jurisdiction and Venue", it simply states that this Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and cites no other jurisdictional authority or statutory authority for the relief requested herein.

jurisdiction to consider the Rule 60(b) Motion.  MAM is playing "fast and loose" with the Court by asserting inconsistent positions to fit its own narrative. This Court should reject this gamesmanship.

**B.      The Court does not have subject matter jurisdiction to enforce a settlement agreement, should one be found to exist.**

20.      Even if MAM's argument with respect to the Rule 60(b) Motion was irrelevant, this Court does not have jurisdiction to enforce any purported settlement agreement between 29 Katz and MAM, should one be found to exist.

21.      This Court has not been asked to approve a settlement agreement under Bankruptcy Rule 9019.[5]   However, even where courts have approved settlement agreements, "the [United States] Supreme Court has made clear that mere approval of a settlement agreement does not confer subject matter to enforce that agreement." *Bowen v. Monus (In re Phar-Mor, Inc. Secs. Litig.)*, 172 F.3d 270, 274-75; *see also In re Ashland Regional Medical Center*, 378 B.R. 450, 453 (Bankr. M.D. Pa. 2007) (the fact that the court had jurisdiction over the underlying matter (which involved the allowance of a claim) did not vest the court with jurisdiction to consider the enforcement of the settlement agreement).

22.      Rather, a court must either expressly retain jurisdiction to enforce the settlement agreement in a subsequent order or there must be an independent basis for jurisdiction. *Id.* at 275 (citing *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 381-82 (1994)).

23.      Neither is present here.  First, there was no court approved executed settlement agreement with an order that retained jurisdiction to enforce the settlement agreement.

---

[5] Despite the assertion made in paragraph 26 of the Motion to Enforce, this Court did not order the parties to participate in mediation; rather, the parties agreed that an attempt to resolve the disputes would be a more efficient use of time and resources than litigating the merits of the Rule 60(b) Motion (including the jurisdictional issue).

24.     Second, there is no independent basis for the Court to have subject matter jurisdiction over any settlement agreement between 29 Katz and MAM (*i.e.* the Court has not even been asked to approve a settlement agreement, much less issue any order with respect to a settlement agreement), and no independent basis was asserted by MAM in the Motion to Enforce. *See Kokkonen*, 551 U.S. at 377 (explaining that the burden of establishing that a matter falls within a federal court's limited jurisdiction lies with the party asserting jurisdiction).

**C.     Any action to enforce a purported settlement agreement should be brought in state court.**

25.     As MAM acknowledged in paragraph 30 of its Motion to Enforce, settlement agreements are to be interpreted and construed according to traditional principles of state contract law. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345 (3d Cir. 2003).

26.     Contract interpretation is generally a matter of state law. *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 564 n.9 (3d Cir. 2023).

27.     Accordingly, "enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Kokkonen*, 551 U.S. at 382.

28.     Because there is no independent basis for federal jurisdiction here, this Court musts dismiss the Motion to Enforce for lack of subject matter jurisdiction.

**II.     The Term Sheet is not a binding contract, as there is no definitive settlement agreement between 29 Katz and MAM.**

**A.     The Term Sheet expressly required a "definitive settlement agreement mutually acceptable to 29 Katz and MAM".**

29.     In three distinct places, the Term Sheet makes clear that it is contingent upon further discussions and agreement between 29 Katz and MAM.

30.     First, in the introductory paragraph, the Term Sheet states

> After a full day of mediation, 29 Katz and MAM, reached agreement on their issues and disputes under the following terms and conditions (***all subject to the execution of a definitive settlement agreement mutually acceptable to 29 Katz and MAM***) . . . .

*See* Exhibit A, at 1 (emphasis added).

31.     29 Katz avers that the parties never reached a "definitive settlement agreement mutually acceptable to 29 Katz and MAM". After all, if there was a definitive executed Settlement Agreement, together with a Lease Amendment and Guaranty Agreement, wouldn't MAM have attached them to the Motion to Enforce?

32.     While drafts of a Settlement Agreement, Lease Amendment, and Guaranty Agreement were circulated (and multiple drafts were exchanged between counsel), it is clear that a meeting of the minds was never reached on any of these documents. Both parties made revisions and exchanged multiple iterations of each document; however, no definitive agreement was attained and no mutually acceptable set of settlement documents was ever executed.

33.     Second, an agreement was never reached as to the term set forth in paragraph 8 of the Term Sheet, which related to any future sale or assignment of the Lease. Paragraph 8 of the Term Sheet includes the following caveat:

> [MAM AND 29 KATZ HAVE AGREED THAT AT THE CONCLUSION OF THE MEDIATION, SUBPARAGRAPH (ii) OF THIS PARAGRAPH 8 **REMAINS SUBJECT TO REVIEW, NEGOTIATION, AGREEMENT AND APPROVAL**. THE MEDIATION IS HELD OPEN ON THIS POINT AND IF 29 KATZ AND MAM CANNOT RESOLVE, THE MEDIATOR CAN ASSIST IN RESOLVIONG *[SIC]* IF 29 KATZ AND MAM SO AGREE].

*See* Exhibit A, at ¶ 8 (emphasis added).

9

34.    From the conclusion of Mediation through the filing of the Motion to Enforce, this issue remained one of the primary stumbling blocks between the parties and a material term that was never resolved.

35.    When the Term Sheet itself acknowledges the existence of an open issue that has not been resolved, there cannot be a meeting of the minds, and there cannot be an enforceable settlement agreement.  This is a basic and fundamental principle of contract law.  *See, e.g., Ismail v. Interstate Res. Inc.*, 842 F. App'x 821, 823 (3d Cir. 2021) ("The enforceability of settlement agreements is governed by principles of contract law. . . .  As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement].")

36.    Third and finally, the Term Sheet concludes with the provision that "Final Agreement on the above terms and conditions ***are subject to*** (i) resolution of the issue identified in paragraph 8 above; and (ii) execution of a definitive settlement agreement."  *See* Exhibit A, at 4 (emphasis added).

37.    Neither condition set forth the conclusion of the Term Sheet were satisfied:  The issue identified in paragraph 8 of the Term Sheet was not resolved, and the parties did not execute definitive settlement documentation.

38.    As such, it is abundantly clear that the Term Sheet was not intended, by its express language, to be a binding agreement as there was not yet a meeting of the minds on all of the terms of the settlement between MAM and 29 Katz.

**B.    The primary cases cited by MAM in support of its argument are distinguishable.**

39.    MAM cites *In re BG Petroleum*, 525 B.R. 620 (Bankr. W.D. Pa. 2015), for the proposition that a term sheet executed pursuant to negotiations supervised by a mediator

10

constitutes a binding contract. However, the term sheet in *BG Petroleum* contained no contingencies and, in fact, the parties in that case presented a settlement agreement to the bankruptcy court for approval.

40.     The issue before the *BG Petroleum* court involved discrepancies in the agreement presented to the court and the mediated term sheet agreed upon and executed by the parties. The bankruptcy court noted that there were no "lingering ambiguities with respect to incorporating the Mediated Term Sheet into a formal document for Court approval".

41.     Here, the Term Sheet made clear that there *were* terms that still needed to be negotiated and resolved between the parties, namely the ability of MAM to sell or assign the Lease without 29 Katz's consent to a related MAM entity or to a unrelated entity at some time in the future and the terms of the definitive settlement documentation.

42.     To reiterate the point, the Term Sheet also made clear that it was subject to the ***execution*** of a definitive settlement agreement mutually acceptable to 29 Katz and MAM. Neither of these contingencies existed in the term sheet presented to the bankruptcy court in *BG Petroleum*. Thus, that case is distinguishable.

43.     Likewise, MAM relies on the Third Circuit's opinion in *Ismail v. Interstate Res. Inc.*, 842 Fed. App'x 821 (3d Cir. 2021), for the concept that a voluntary agreement to settle a lawsuit is binding on the parties, noting that the Term Sheet does not contemplate revocation or future repudiation.

44.     While it may be true that the Term Sheet does not contemplate revocation or future repudiation, it does include express and unambiguous language that its effectiveness is subject to the execution of a definitive settlement agreement that is mutually acceptable to both 29 Katz and MAM.

11

45.     Specifically, the parties were never able to reach an agreement as to paragraph 8 of the Term Sheet.  Additionally, even though a draft settlement agreement was prepared, there was no meeting of the minds as to all terms of the settlement agreement, such that the settlement agreement could not be considered either "definitive" or "mutually acceptable" to both 29 Katz and MAM.

46.     In fact, in the *Ismail* case cited by MAM, the Third Circuit went on to explain that "the enforceability of settlement agreements is governed by principles of contract law.  As with any contract, ***it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms*** . . . of the agreement."  *Ismael*, 842 Fed. App'x at 823 (emphasis added).

47.     Clearly that was not the case here, as 29 Katz and MAM could not reach a meeting of the minds as to the scope of MAM's rights to sell or assign the Lease without 29 Katz's consent and 29 Katz's right to withhold that consent.  In fact, a review of the Motion to Enforce makes it clear that MAM never even alleges there was a meeting of the mind on **all** terms of the agreement.  MAM picks and chooses what it wants to bring before this Court.  This is a fatal defect to the Motion to Enforce.

**III.     There is no basis to award MAM attorneys' fees or sanctions.**

48.     The Motion to Enforce baldly asserts that 29 Katz acted "unacceptably" and tried to "coerce" MAM in some vague and unidentifiable way.

49.     No evidence of such conduct exists, and certainly MAM has not made allegations sufficient to demonstrate that 29 Katz acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."

50.     Accordingly, any attempt to claim entitlement to attorneys' fees or sanctions is wholly meritless and should be denied.

## CONCLUSION

51.     Based upon the foregoing, the Motion to Enforce should be denied in its entirety.

WHEREFORE, 29 Katz Crew, LP respectfully requests that this Honorable Court issue an Order denying the Motion to Enforce Settlement and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 8, 2026                                     TUCKER ARENSBERG, P.C.

*/s/ Evan C. Pappas*
Evan C. Pappas, Esquire
Michael A. Shiner, Esquire
Maribeth Thomas, Esquire
TUCKER ARENSBERG, P.C.
300 Corporate Center Drive, Suite 200
Camp Hill, PA 17011
Telephone: (717) 234-4121
Fax: (717) 232-6802
E-mail:  epappas@tuckerlaw.com
                mshiner@tuckerlaw.com
                mthomas@tuckerlaw.com

*Counsel for 29 Katz Crew, LP*

13