BSD

Law Office of Shmuel Klein PA
Attorney for HVP2 LLC
113 Cedarhill Ave
Mahwah, NJ 07430
845-425-2510
Attorney ID 00851987
email: shmuel.klein@verizon.net

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:
LAKEHURST AND BROADWAY CORPORATION,
Debtor.[1]

Chapter 11
Case No. 25-14831 (MBK)

TO: HONORABLE MICHAEL B. KAPLAN
United States Bankruptcy Judge

MEMORANDUM OF LAW IN OPPOSITION
TO MOTION OBJECTING TO CLAIM #2268 OF HVP2 LLC

COMES NOW HVP 2 LLC (hereinafter HVP2) by and through its undersigned counsel, hereby requests the motion of the Debtor/Trustee be denied. As for cause, HVP2 relies on the following arguments and legal authority.

Background

Debtor assignor had HVP2 borrow approximately six million dollars, purchase real estate and construct a custom built pharmacy building located at 83 Vandenburgh Ave., Troy, NY (the property) in or about 2017. The substantial loan and custom building were based upon specific promises contained in a lease and its amendments all for the benefit of the Debtor. A real estate broker was paid tens of thousands of dollars based upon the full lease term (which term was breached seven years into the lease

On December 30, 2025, the Court entered the *Order Granting Debtors' Motion for Final Decree Closing Certain of the Chapter 11 Cases in New Rite Aid, LLC, et al.*, closing all cases listed therein except for the above captioned Debtor [Case No. 25-14861 (MBK), Docket No. 3695] (the "Order on Final Decree"). The Court has entered a text order on the affiliated dockets listed in the Order on Final Decree requiring that all remaining matters be filed under the above captioned case, *Lakehurst and Broadway Corporation*, Case No. 25-14831 (MBK). Except as otherwise provided herein, references to the "Docket" herein shall refer to the docket in the formerly jointly administered cases captioned *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK).

agreement). In the final lease (see Exhibit A) the Debtor bound itself to pay monthly rent, common area charges, taxes, utilities and maintenance charges for twenty years.

On May 5, 2025 (the "Petition Date"), the New Rite Aid LLC, the predecessor Debtors, filed numerous voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The consolidated case became a liquidation but remained as a chapter 11 rather than a chapter 7 costing millions of dollars of unnecessary attorney fees.

The Debtor continued to run its business and occupy the property however on July 31, 2025 the Debtor allegedly rejected the HVP2 lease and surrendered the property (that issue is under review by the District Court as an appeal of this Court's order).

On November 26, 2025, this Court entered an order "Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC" [Docket No. 3445]. On December 15, 2025, the Court entered a "Supplemental Order to Order Approving the Disclosure Statement and Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates" [Docket No. 3536].

The Plan became effective on December 31, 2025 (the "Effective Date"). On the Effective Date, a "Liquidating Trust" was established pursuant to the terms of the Plan. A Liquidating Trustee became the "sole representative" of the predecessor Debtors. It then assumed responsibility for resolving claims, performing claims reconciliation, and objecting to claims. See Plan, Art. IX.A. and Trust Agreement, Art. II.

HVP2 filed its proof of claim on 11/24/2025 as claim #2268 together with the lease and a substantial number of bills all of which "clearly state its basis or include adequate supporting documentation" Section IV ¶¶25–27 as the basis for the claim. After various motions, most of the administrative claims were resolved, however, some matters remain unresolved and are under review of the United States District Court in its appellate role of bankruptcy court orders.

On 8/14/2026 the successor Debtor/Trustee filed its "Sixth Omnibus Objection" (Docket #492)

to almost one hundred claims alleging various basis for not paying the claim. Included in the list was HVP2's claim. HVP2's filed claim included substantial documentary basis for the amounts claimed. Even if the claim were not amended, HVP2 believes the substantial amount of documentary evidence supported the claim, and the motion would have been denied as to HVP2. However, because the aforesaid claim contained administrative fees which became nearly moot because of successful motion practice, HVP2 then amended its claim as solely unsecured on August 25, 2026 (See Exhibit A annexed hereto and made part hereof). As a result of the amendment, the Debtor's motion is moot and the motion must be denied as to HVP2. The amended claim is an unsecured claim based on the breached lease. If the Debtor wishes to object to the amended claim, the Debtor should file a separate motion. Alternatively, the Court should allow the amended claim.

Burden of Proof in Claims Objection

In analyzing objections to proofs of claim, bankruptcy courts must consider two primary sources: the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Section 502(a) of the Code provides that a proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §502(a). In this Circuit, the Court of Appeals has held that a proof of claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. In re Allegheny I.nt'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). "[T]he allegations of the proofs of claim are to be taken as true. If they set forth all the necessary facts to establish a claim, and are not self-contradictory, prima facie, they establish a proper filed claim.

If the proof of claim states facts sufficient to make a prima facie case the Court is bound to allow the claim, unless evidence controverting such facts is given by the objecting party. In re Castle Braid Co., 145 F. 224, 228 (S.D.N.Y. 1906). The objector Debtor Trustee submits nothing in support of its motion except a broad non specific assertion that the claim does not "clearly state its basis or

include adequate supporting documentation" Section IV ¶¶25–27. In fact, the original claim does "clearly state its basis or include adequate supporting documentation" Section IV ¶¶25–27, identifies the specific lease and includes specific bills supporting the claim.

Objection is Moot

In Liner v. Jafco, Inc., 375 U.S. 301, 84 S. Ct. 391, 11 L. Ed. 2d 347 (1964) expressly stated that the mootness doctrine "derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." See also N.J. Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985) (explaining that "[t]he Supreme Court first explicitly relied on Article III" as the basis for the mootness doctrine in Liner, thereby "elevat[ing] . . . mootness doctrine to constitutional status" ). Since the claim has been amended, there is no longer a "case or controversy". The motion should be denied as to HVP2 claim.

Bankruptcy Code Section 502(b)(6)

The following analysis is made to assist the Court should it decide to allow the amended claim rather than requiring the Debtor/Trustee to make a separate motion objecting to the amended claim. When the assignee Debtor rejected its lease, HVP2, as landlord, became entitled to a rejection damages claim. Section 502(b)(6) of the Bankruptcy Code limits the recovery a landlord may receive for "rejection damages." The landlord is entitled to rent due under the rejected lease for the greater of (i) one year's rent, or (ii) fifteen percent (15%) of the rent due under the lease, not to exceed three years rent. Unlike the administrative rent claim, a rejection damage claim is a general non-priority unsecured claim. The landlord's rejection damage claim is capped under Section 502(2)(b)(6), but the landlord is entitled to include all amounts that constitute "rent" under the lease. Items that may include "rent" utility fees, common area maintenance charges and taxes. That Code section views a rejected lease as one that is in breach by the tenant.

Landlord claims against their bankrupt tenants for the breach of the lease and the resulting losses have always been treated differently than other unsecured claims. When Congress overhauled

Bankruptcy Code in the Bankruptcy Reform Act of 1978, section 502(b)(6) of the 1978 Act was intended to carry forward existing law allowing limited damages for lost rental income. S. Rep. No. 95-989, at 63 (1978) as reprinted in 95th Cong., 2nd Sess. 1978, 1978 U.S. Code Cong. & Admin. News 5787, 5849. See In re El Toro Materials Co., Inc., 504 F.3d 978, 981 (9th Cir. 2007).

The section speaks the amount of damages recoverable from the estate as a result of the breach of a lease by a Debtor. See Episode USA, Inc., 202 B.R. at 695 ("[t]he thrust of the § 502(b)(6) cap... acts to limit the amount of damages the lessor may be allowed from the bankruptcy estates").

The Chapter 11 cases were filed before the expiration of the term of the HVP2 Lease. The Tenant Debtor rejected the lease and vacated the Property and is indisputably in breach of the Lease,

> "the standard for termination of a lease by operation of New York state law, [ ] requires both the landlord and the tenant to take unambiguous actions indicating that each party views the lease as terminated before a court will find an effective termination of the lease." Interim Order at 7 (citing Brock Enters. v. Dunham's Bay Boat Co., 292 A.D.2d 681, 682 (3d Dept. 2002)).

"Termination" is not, however, defined for purposes of the Bankruptcy Code. Since the property is in New York, New York law applies. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

Time Approach

Bankruptcy courts within the Third Circuit (specifically the District of Delaware such as In re Filene's Basement, LLC 2015 WL 1806347, (Bankr. D. Del. Apr. 16, 2015) held that the statutory cap on a landlord's lease rejection damages under Bankruptcy Code Section 502(b)(6) should be calculated using the "time approach" rather than the "rent approach". This brief will not discuss the difference between the two approaches and instead bases its argument on the holding of Filene's Basement, supra "time approach" which this District consistently follows. Of note, the American Bankruptcy Institute Commission to Study the Reform of Chapter 11 suggested in its Final Report and Recommendations that § 502(b)(6) should be clarified consistent with the "time approach".

The time approach period is equal to 15 percent of the remaining lease term, so long as that time period is at least one year and no more than three years." See In re Filene's Basement, LLC, supra; In

re Cortlandt Liquidating LLC, 648 B.R. 137, 140 (Bankr. S.D.N.Y. 2023).

The original lease commenced on January 18, 2018 (see Exhibit A). It was a 20 year lease or the lease would have been up for renewal on January 17, 2038. The remaining term is 12 years, 5 months, 17 days (4,553 days). The lease was allegedly rejected on July 31, 2025 (this question is sub judice on appeal). For argument sake, without prejudice, the statute states that the rent is capped at 15% of the remaining term or 683 days which is greater then a one year rent of 365 days and is under the 3-year (1,095-day) ceiling, and as a result the 15% figure controls: 683 days, running from July 31, 2025 to approximately June 14, 2027.

Because the 683-day window falls entirely within the fist original term, "Years 1–10" bracket under the lease ($356,216.00/year), which runs through January 17, 2028, it does not cross into the Years 11–20 rate ($391,838.00/year), so no pro-ration between rates can be claimed.

The daily rate is calculated by using the applicable annual rent of $356,216.00 ÷ 365 which equals $975.93/day. The amended Claim amount: $975.93 × 683 days which equals $666,566.19.

The same method applied to CAM (Common Area Maintenance) charges, at $47,566.60 annually ($130.32/day), yields $89,008.19. Real Property Tax, at $107,740.69 annually ($295.18/day), yields $201,607.92. The smaller pass-through categories follow the same pattern: Utilities at $657.00 annually ($1.80/day) yields $1,229.40; Water at $405.68 annually ($1.11/day) yields $759.12; Security at $883.20 annually ($2.42/day) yields $1,652.67; and Insurance at $35,301.34 annually ($96.72/day) yields $66,057.03. Adding together the capped amount from all seven categories produces a total unsecured claim of $1,026,874.52. The amount included the recurring charges the tenant was contractually obligated to pay under the lease. The following chart summarizes the above explanation.

| Description | Annual Amount | Daily Amount | § 502(b)(6)(A) Amount Due |
|---|---|---|---|
| Rent | $356,216.00 | $975.93 | $666,560.19 |
| CAM | $47,566.60 | $130.32 | $89,008.19 |
| Real Property Tax | $107,740.69 | $295.18 | $201,607.92 |

| | | | |
|---|---|---|---|
| Utilities | $657.00 | $1.80 | $1,229.40 |
| Water | $405.68 | $1.11 | $759.12 |
| Security | $883.20 | $2.42 | $1,652.67 |
| Insurance | $35,301.34 | $96.72 | $66,057.03 |
| **Total amount of unsecured claim** | | | **$1,026,874.52** |

The amended claim includes all the bills from the original claim together with the lease, all of which "clearly state its basis or include adequate supporting documentation" Section IV ¶¶25–27 as the basis for the claim.

WHEREFORE it is respectfully requested the Debtor's motion be denied as moot and/or alternatively, the amended claim be deemed an allowed unsecured claim.

Dated: August 31, 2026

BY: /s/ Shmuel Klein
Shmuel Klein attorney for HVP2 LLC