# IN THE COURT OF APPEALS OF VIRGINIA

Tuesday the 27th day of October, 2026.

Van Prince, Appellant,

against

Ignatius, Pharmacy Manager
Rite Aid #04263 Appellee.

**Record No. 0890-25-1**

From the Circuit Court of the City of Norfolk
Circuit Court No. CL24-1952

Upon consideration of the appellee's suggestion of bankruptcy filed on June 5, 2025 and the subsequent pleadings of the parties, and upon receipt of proof of the filing of an action in bankruptcy in the United States Bankruptcy Court for the District of New Jersey, we continue the stay of any further proceedings in this case, including the filing of briefs, until further appropriate action by the bankruptcy court. The parties are directed to notify this Court no later than April 6, 2027, with an update regarding the status of the bankruptcy action.

BACKGROUND

On February 16, 2024, appellant Van Prince filed a complaint against appellee Ignatius, the manager at Rite Aid #04263, alleging that Ignatius refused to provide him with prescribed medications that were ready for pickup at a Rite Aid in Norfolk.[1] As causes of action, Prince asserted that Ignatius had violated his constitutional rights under the First, Eighth, and Fourteenth Amendments, and corresponding rights protected by the Virginia Constitution; breach of contract; negligence per se; and negligence.

The trial court sustained Ignatius's demurrer and dismissed Prince's claims with prejudice. The court "h[eld] that Prince's constitutional claims are not viable because [Ignatius] is not—nor is he alleged to be—a state actor," and "[c]onstitutional torts, brought under either the United States Constitution or the Virginia

[1] From an exhibit attached to the suggestion in bankruptcy, it appears that the appellee's full name is Ignatius Combrinic. However, as he is referred to as "Ignatius" throughout the pleadings and in the caption of the case, we will refer to him as Ignatius here.

Exhibit 4

Constitution, 'can only be asserted against state actors.'" *See Coward v. Wellmont Health Sys.*, 295 Va. 351, 359 n.4 (2018); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). As to Prince's breach of contract claim, the trial court found that "Prince has failed to allege that he and Defendant were parties to a legally enforceable obligation." The court found further that Prince had failed to "identify [a] specific statute that [Ignatius] allegedly violated" giving rise to a cognizable negligence per se claim, *see Collett v. Cordovana*, 290 Va. 139, 148 (2015), and failed to "allege[] what duty, if any, [Ignatius] allegedly breached" giving rise to a common law negligence claim, *see Kellerman v. McDonough*, 278 Va. 478, 487 (2009).

Prince appealed, but opposing counsel filed a suggestion of bankruptcy for Ignatius' employer Rite Aid with this Court. Ignatius asserted that "the alleged conduct by the [Ignatius] was done so as an employee of [Rite Aid] within the course and scope of his employment," and that "[a]s such, [Prince's] claims against [Ignatius] would be imputed to . . . and would implicate [Rite Aid]." As such, Ignatius argued, Prince's suit "would constitute an act by [Prince] to obtain possession of property of or from the [Rite Aid's] bankruptcy estates, or to exercise control over property of the Debtors' bankruptcy estates." Alluding to a previous suit by Prince against Rite Aid, Ignatius further asserted that the present suit "is simply an effort to circumvent the protections afforded to [Rite Aid] via the United States Bankruptcy Code by trying to reach the [Rite Aid]'s assets through its employee's actions."[2]

On June 24, 2025, we granted a stay of the proceedings pending resolution of the bankruptcy action. On June 12, 2026, Prince moved this Court to proceed with the case despite the automatic stay arising from the bankruptcy action, asserting that Ignatius had not himself filed for bankruptcy and that his suit was therefore not subject to automatic bankruptcy stay, and further arguing that his claim against Ignatius arose after Rite Aid's bankruptcy date. In response to Prince's motion, we ordered that parties file supplemental bring, addressing the impact, if any, of the United States Supreme Court's recent holding in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024); what provisions of the Chapter 11 Plan of Reorganization

---

[2] *Prince v. Rite Aid corp., et al.*, case No. CL23-13519, Norfolk Circuit Court, appealed to this Court as Record No. 0114-25-1. *See* suggestion of bankruptcy filed June 5, 2025, Exhibit A; *see also* Prince's motion to proceed with the appeal despite the bankruptcy automatic stay.

demonstrate that Prince's claim against Ignatius was discharged in the bankruptcy; and the relevance, if any, of the *New Rite Aid* bankruptcy filed subsequent to Prince's claims against Ignatius.

In his supplemental brief, Prince argued that *Harrington* "holds only that the bankruptcy code[] [d]oes not authorize a release and injunction that, as a part of a plan of reorganization Under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants"; that "[t]here is no specific provision of the Chapter 11 Reorganization Plan that Prince's claims [a]gainst Ignatius in his individual capacity rather than Rite Aid Corporation, were discharged in bankruptcy"; and that New Rite Aid "has zero relevance of the second amended joint Chapter 11 Plan being a separate legal [c]orporation in connection with Rite Aid Corporation."

Opposing counsel responded that Prince's claims against him were clearly related to Rite Aid because, although no court has yet to rule on his motion, Prince had moved to add Rite Aid as a defendant below, and that the bankruptcy court had already declined to lift the automatic stay. Ignatius further asserted that the bankruptcy plan include claims relating to services performed by current or previous employees, and that parties released under the plan include debtor related parties, which includes Ignatius as a Rite Aid employee. Regarding the relevance New Rite Aid bankruptcy to Prince's action, Ignatius asserted that New Rite Aid's bankruptcy action commenced in May 2025, after Prince's claim allegedly arose. The New Rite Aid bankruptcy was a jointly administered chapter 11 proceeding, he explained, and the original Rite Aid "was itself a debtor in the New Rite Aid cases." As a result, he asserts, Prince's claims not discharged under Rite Aid's original bankruptcy—including the present claim—constituted pre-petition liability falling within the scope of the New Rite Aid bankruptcy.

Finally, regarding the applicability of *Harrington*, Ignatius argued that nothing in that case "held that third-party releases coupled with opt-in or opt-out procedures are nonconsensual or otherwise per se invalid." The New Rite Aid bankruptcy plan contained an opt-out mechanism for third-party releases and, Ignatius asserted, Prince completed and filed the requisite opt-out form. Ignatius further explained that the New Rite Aid bankruptcy plan contains a "gatekeeping provision" under which any person that opted out may not

assert its claims against any released party without first obtaining a final order from the bankruptcy court authorizing the person to pursue the claim. Any judgment that Prince might win on the present claim in state court without first procuring the requisite authorization from the bankruptcy court, Ignatius argues, would be void. *See In re Mariner Post-Acute Network, Inc.*, 303 B.R. 42, 47 (Bankr. D. Del. 2003) (citing *In re Pavelich*, 229 B.R. 777 (B.A.P. 9th Cir. 1999); *In re Motley*, 268 B.R. 237, 242 (Bankr. C.D. Cal. 2001).

ANALYSIS

Upon review of the supplemental briefing ordered by this Court, as well as the rest of the filings submitted by the parties, we conclude that further action on this appeal is inappropriate until the bankruptcy court determines whether the claims at issue here within the scope of the Rite Aid or New Rite Aid bankruptcy proceedings and if so, what if any impact that has on those claims.

In *Harrington*, the Supreme Court broadly held that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." 603 U.S. at 227. But *Harrington* is readily distinguishable from the present case. *Harrington* concerned the bankruptcy proceedings of Purdue Pharma in the context of the national opioid crisis. *Id.* at 210-11. "Purdue was a 'family company,' owned and controlled by the Sacklers." *Id.* at 210 (quoting *In re Purdue Pharma L. P.*, 635 B.R. 26, 40 (S.D.N.Y. 2021). "Members of the Sackler family served as president and chief executive officer; they dominated the board of directors; and they 'were heavily involved' in the firm's marketing strategies." *Id.* (quoting *In re Pharma L.P.*, 69 F.4th 45, 86 (2d Cir. 2023) (Wesley, J., concurring in judgment)). "They 'pushed sales targets,' too, and 'accompanied sales representatives on "ride along" visits to health care providers' in an effort to maximize OxyContin sales." *Id.* (quoting *In re Purdue*, 635 B.R., at 50).

In 2007, an affiliate of Purdue "pleaded guilty to a federal felony for misbranding OxyContin as 'less addictive' and 'less subject to abuse . . . than other pain medications.'" *Id.* at 210 (alteration in original) (quoting *In re Purdue*, 635 B.R. at 49). Thousands of civil suits against Purdue followed. *Id.* "Appreciating this litigation 'would eventually impact them directly,'" *id.* at 210 (quoting *In re Pharma*, 69 F.4th, at 59),

"the Sacklers began what one family member described as a 'milking' program,'" *id.* (quoting *In re Purdue*, 635 B.R., at 57), "taking as much as 70% of the company's revenue each year," draining about $11 billion dollars from the company between 2008 and 2016—about 75% of its assets. *Id.* at 211 (citing *In re Purdue*, 635 B.R. at 57). The present case is quite different. In *Harrington*, the bankrupt corporation was the creature of the Sackler family, who thoroughly dominated and controlled it, siphoning off its assets for their own purposes. *Harrington* did not involve respondeat superior, and the Supreme Court noted that it was not "pass[ing] upon a plan that provides for the full satisfaction of claims against a third-party nondebtor." *Id.* at 206.

Here, by contrast, Ignatius was the servant of the bankrupt corporation—Rite Aid—and subject to its control. The distinction matters, because "courts have recognized the extension of [the automatic stay] to non-debtors in limited circumstances." *Turman v. Ameritruck Refrigerated Transp., Inc.*, 2001 U.S. Dist. LEXIS 1744, 7 (D. Kan. Feb. 6, 2001).[3] "A narrow exception allows a stay to be imposed . . . against a nonbankrupt party in 'unusual situations'" such as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) (alteration in original) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). The automatic stay may extend to nondebtors in special circumstances, such as "when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor." *In re Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995). In this present case, it is plausible that Rite Aid is "liable for the actions of [Ignatius] taken in the course of his employment under the doctrine of respondeat superior. Thus, the bankruptcy court was confronted with an 'unusual situation' in which a judgment against [Ignatius] would, for all practical purposes, be a judgment against [Rite Aid], the debtor." *Turman*, 2001 U.S. Dist. LEXIS 1744 at 8; *see*

---

[3] "While not binding, unpublished cases may be cited as persuasive authority," *Hughes v. Commonwealth*, 87 Va. App. 536, 551 n.5 (2026), and may be cited as "informative;" *Stokes v. Commonwealth*, 61 Va. App. 388, 395 n.3 (2013); *see also* Rule 5A:1(f).

*Oklahoma Federated Gold & Numismatic,* 24 F.3d at 141; *see also In re Wolf Fin. Group, Inc.*, 1994 Bankr. LEXIS 2350, 22 (Bankr. S.D.N.Y. Dec. 15, 1994) (noting that courts have stayed "prosecution of civil actions against non-debtor employees of a chapter 11 debtor-in-possession on the grounds that by application of principles of respondeat superior, a judgment against the employees could collaterally estop the debtor in future litigation.").

From the pleadings before us, it appears that Prince's claim may, in substance, be a claim against Rite Aid by operation of the doctrine of respondeat superior. But in the last analysis, it is for the bankruptcy court, not this Court, to ascertain whether Prince's claim falls within the scope of the New Rite Aid bankruptcy; whether it survived that proceeding; and if so, to what extent the claim is governed by the provisions of the New Rite Aid bankruptcy plan.

We therefore deny Prince's motion to continue the appeal despite the bankruptcy proceedings, and continue the stay of the present appeal pending further action of the bankruptcy court.[4]

Teste: A. John Vollino, Clerk

Entered: Robert Blosser
Deputy Clerk

COURT OF APPEALS OF VIRGINIA

[4] The motion to dismiss Prince's appeal is denied without prejudice pending further action of the bankruptcy court. Prince's motion to strike Ignatius' supplemental briefing ordered by this Court is denied. Prince's motion for sanction against opposing counsel is denied. Any other pending motions not specifically addressed here are denied.