**IN THE COURT OF APPEALS OF VIRGINIA**

**SCV RECORD NO. 0890-25-1**

---

**VAN PRINCE,**

**PLAINTIFF-APPELLANT,**

**v.**

**IGNATIUS, PHARMACY MANAGER,
RITE AID #04263**

**DEFENDANT-APPELLEE.**

---

# APPELEE'S SUPPLEMENTAL OPPOSITION TO APPELLANT'S MOTION TO CONTINUE APPEAL

---

Brian A. Cafritz, VSB# 34366
KALBAUGH PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Brian.Cafritz@kpmlaw.com



Exhibit 6

Rite Aid Corporation ("Rite Aid"), by and through counsel, submit this supplemental brief in response to the Court's August 17, 2026 Directive (the "Directive") and in further support of the Opposition to the Motion to Continue the Appeal.

**Background**

On July 8, 2026, Rite Aid filed its Opposition to the Motion to Continue the Appeal (the "Opposition").[1] The Opposition contends that: (i) Appellant's motion is not properly before this Court; (ii) Appellant is enjoined from proceeding in the instant action; (iii) Appellant's causes of action, if any, were discharged and released pursuant to Article X.A of the Plan; and (iv) to the extent Appellant contends that his causes of action survived the first Chapter 11 Cases, the gatekeeping provisions contained in the 2025 Plan and 2025 Confirmation Order preclude this Appeal from proceeding absent a determination by the Bankruptcy Court.

The Directive requests that the Appellee address the following issues:

I. Did the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates discharge Prince's claims against Ignatius in his individual capacity considering *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024)?

II. What specific provisions of the Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates demonstrate that Prince's claims

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Opposition.

against Ignatius in his individual capacity, rather than Rite Aid Corporation, were discharged in bankruptcy?

III. What is the relevance of the Second Amended Joint Chapter 11 Plan of Reorganization of New Rite Aid, LLC and Its Debtor Affiliates given that New Rite Aid, LLC is a separate legal entity from Rite Aid Corporation formed in connection with Rite Aid Corporation's bankruptcy proceedings?

As stated in the Opposition, undersigned counsel does not represent Appellee, a current or former employee of Rite Aid, in his individual capacity. Rather, because Appellee has expressed an intention to amend the Complaint to add Rite Aid as a defendant, and although no court has yet ruled on Appellee's motion to revise the Complaint, Rite Aid submits this response out of an abundance of caution. To facilitate the prompt and orderly resolution of this Appeal and to avoid proceedings that may contravene the Bankruptcy Code, the Confirmation Order, and the 2025 Confirmation Order, Rite Aid respectfully submits the following in response to the Court's Directive:

**A. (I) Whether the Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates Discharged Prince's Claims Against Ignatius in His Individual Capacity Under *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), and, if so, (II) What Provisions of the Plan Demonstrate That Such Claims Were Discharged?**

Rite Aid believes that a brief recitation of the relevant bankruptcy proceedings will assist the Court. On October 15, 2023, Rite Aid and its debtor affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United



70913/0001-54069183v2

States Bankruptcy Court for the District of New Jersey. On February 16, 2024, Appellant filed the Complaint, alleging that Appellee violated several of Appellant's constitutional rights in connection with an incident that allegedly occurred on January 31, 2024.

Clearly aware of the bankruptcy proceedings, Appellant filed the *Motion in Reference to and Because Rite Aid Corp, Et Al Have Violat[ed] the Terms of their Chapter 11 Bankruptcy Petitions Pursuance to 11 U.S.C. § 362(a)* on March 7, 2024. [Case No. 23-18993; Docket No. 2315] (the "Motion for Relief"). On June 3, 2024, Appellant moved to revise the Complaint to add Rite Aid as a defendant. No court has ruled on that motion. On August 8, 2024, the Bankruptcy Court summarily denied the Motion for Relief, finding no "cause" to lift the automatic stay pursuant to section 362 of the Bankruptcy Code. [Case No. 23-18993; Docket No. 4491].

On August 16, 2024, the Bankruptcy Court entered the Confirmation Order confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and its Debtor Affiliates (With Further Modifications)* [Case No. 23-18993; Docket No. 4532, Ex. A] (the "Plan"). The Plan provides that, to the fullest extent permitted by the Bankruptcy Code, it discharges "Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date," including claims that "relate to services performed by

current or former employees of the Debtors prior to the Effective Date." *See* Plan Art. X.A.

The Plan also provides that "Released Parties" include "any Debtor Related Party." Plan, Art. I, ¶ 156. The Plan defines a "Debtor Related Party" to include employees of Rite Aid. Plan, Art. I, ¶ 98. Accordingly, because Appellee was a Rite Aid employee at all relevant times, Appellee qualifies as a Debtor Related Party and therefore constitutes a Released Party under the Plan.

The remaining question, therefore, is whether Appellant's claims were discharged by the Plan. Although the Plan clearly discharges such claims and Appellant was on notice of the bankruptcy, having filed a motion before the Bankruptcy Court, for the reasons set forth below, the Court need not resolve the discharge issue. Even assuming Appellant's claims survived confirmation of the Plan, Appellant must first obtain a determination from the Bankruptcy Court authorizing the prosecution of those claims before this Appeal may proceed.

Nevertheless, Rite Aid addresses the issue identified by the Court concerning the effect of *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). In *Purdue*, the Supreme Court held that the Bankruptcy Code does not authorize a chapter 11 plan to impose a nonconsensual third-party release that effectively extinguishes claims against a non-debtor without the consent of the affected claimants. However, nothing in *Purdue* held that third-party releases coupled with opt-in or opt-out

procedures are nonconsensual or otherwise *per se* invalid. To the contrary, the Supreme Court expressly stated that it did "not express a view on what qualifies as a consensual release" and further emphasized that "[n]othing in this opinion should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan." *Purdue Pharma*, 144 S. Ct. at 2074.

Accordingly, *Purdue* does not resolve the issue presented here.[2] Rather, the relevant inquiry is whether the release at issue was consensual under the terms of the Plan and the solicitation procedures approved by the Bankruptcy Court. In any event, the Court need not decide that question because, as discussed below, even assuming Appellant's claims survived confirmation of the Plan, the 2025 Plan and 2025 Confirmation Order require Appellant to obtain authorization from the Bankruptcy Court before prosecuting such claims.[3]

"Opt-in" provisions, as they have come to be known in bankruptcy, are mechanisms through which parties are afforded the opportunity to voluntarily consent to specified plan treatment or releases. By contrast, "opt-out" provisions

---

2 The Court should note that the Confirmation Order was entered on August 16, 2024, after *Purdue* was issued, and the Bankruptcy Court nevertheless approved the Plan's consensual third-party release framework.

3 To the extent the Court decides any issues regarding the applicability of *Purdue* or the effectiveness of the third-party releases and gatekeeping provisions, Rite Aid reserves all rights to seek review of that determination in the Bankruptcy Court, which retained exclusive jurisdiction over such matters. *See* Plan, Art. XIII, 2025 Plan Art. XIII.

presume a claimant's consent to specified plan treatment or releases unless the claimant affirmatively elects to reject or exclude itself from such treatment within the time and manner prescribed by the plan and applicable solicitation procedures. These provisions, and the corresponding third-party releases they support, are routinely approved in chapter 11 cases in the District of New Jersey.[4]

The Plan contained an opt-in mechanism with respect to certain third-party releases. Creditors who filed proofs of claim were afforded the opportunity to affirmatively consent to the applicable release provisions through the solicitation procedures approved by the Bankruptcy Court. Rite Aid is not aware of any record indicating that Appellant submitted an opt-in form or otherwise affirmatively consented to the third-party release provisions. The Court need not resolve the legal effect of that circumstance, however, because even assuming that Appellant's claims survived confirmation of the Plan, Appellant must first obtain a determination from the Bankruptcy Court authorizing the prosecution of those claims before this Appeal may proceed, as discussed below.

---

4 *See, e.g.*, *In re STG Logistics, Inc.*, No. 26-10258 (MEH) (Bankr. D.N.J. May 18, 2026); *In re Multi-Color Corp.*, No. 26-10910 (MBK) (Bankr. D.N.J. Apr. 16, 2026); *In re Pretium Packaging, L.L.C.*, No. 26-10896 (CMG) (Bankr. D.N.J. Feb. 23. 2026); *In re CCA Construction, Inc.*, No. 24-22548 (CMG) (Bankr. D.N.J. Feb. 11, 2026); *In re New Rite Aid, LLC*, No. 25-14861 (MBK) (Bankr. D.N.J. Nov. 26, 2025); *In re Bowflex Inc.*, No. 24-12364 (ABA) (Bankr. D.N.J. Aug. 19, 2024); *In re Sam Ash Music Corp.*, No. 24-14727 (SLM) (Bankr D.N.J. Aug. 15, 2024); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024).

### B. Relevance of the 2025 Plan Given that Rite Aid and New Rite Aid Are Separate Legal Entities and the Plan and 2025 Plan's Gatekeeping Provisions

While Rite Aid and New Rite Aid, LLC are distinct legal entities, the Court should note that *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK) (Bankr. D.N.J.), was a jointly administered chapter 11 proceeding, and Rite Aid Corporation—the lead debtor in the prior chapter 11 cases—was itself a debtor in the *New Rite Aid* cases, having commenced Case No. 25-14731 (MBK) on May 5, 2025. Accordingly, any liability of Rite Aid that survived the confirmation of the Plan, including Appellant's alleged causes of action, constituted a prepetition liability in the 2025 chapter 11 cases. As a result, to the extent Appellant's claims were not previously discharged under the 2024 Confirmation Order and Plan, those claims became subject to the provisions of the 2025 Plan and 2025 Confirmation Order, including the release, injunction, and gatekeeping provisions discussed below.

In contrast to the Plan, the 2025 Plan contained an opt-out mechanism with respect to the Third-Party Release. 2025 Confirmation Order ¶ 21. The Debtors' records reflect that Appellant completed and submitted the Opt-Out Form that was provided to him. Accordingly, assuming Appellant's causes of action survived the prior bankruptcy proceedings, Appellant preserved any direct third-party causes of action that were not otherwise released under the 2025 Plan.

However, Article X.D of the 2025 Plan contained a "gatekeeping provision" which states:

> From and after the Effective Date, any Entity that opted out of the releases contained in this Article X.D may not assert any claim or other Cause of Action against any Released Party which would have, if such party had not opted out of the releases contained in this Article X.D, been released pursuant hereto, without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, **that such claim or Cause of Action is not subject to the releases contained in Article X.C of the Plan as a derivative claim or otherwise** and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct claim or a derivative claim released pursuant to Article X.C.

The purpose of the Gatekeeping Provision is to ensure that the Debtors and other Debtor related parties are not required to litigate, in multiple forums, claims that may have been released, discharged, enjoined, or otherwise affected by the 2025 Plan and 2025 Confirmation Order. The provision further ensures that questions concerning the scope and effect of the 2025 Plan, the 2025 Confirmation Order, and the related release and exculpation provisions are decided in the first instance by the Bankruptcy Court that entered those orders and supervised the chapter 11 proceedings.

Under this framework, which has been routinely approved in numerous jurisdictions, including the District of New Jersey,[5] the Bankruptcy Court interprets and enforces its own orders and determines whether a claimant possesses a colorable claim that remains assertable following confirmation of a chapter 11 plan. The Bankruptcy Court therefore conducts the threshold inquiry into whether a proposed action may proceed or whether the asserted claims were released, discharged, exculpated, or otherwise barred under the 2025 Plan and 2025 Confirmation Order. In making that determination, the Bankruptcy Court construes the 2025 Plan and applies its terms in conjunction with the 2025 Confirmation Order.

Moreover, "a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Congoleum Corp.*, 149 F.4th 318, 336 (3d Cir. 2025). Additionally, "[i]t is well settled bankruptcy law that a state court judgment obtained in violation of a discharge

---

[5] *See, e.g.*, *In re STG Logistics, Inc.*, No. 26-10258 (MEH) (Bankr. D.N.J. May 18, 2026) (approving a similar gatekeeping provision); *In re Pretium Packaging, L.L.C.*, No. 26-10896 (CMG) (Bankr. D.N.J. Feb. 23. 2026) (same);; *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024) (same); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Jun. 13, 2024) (same); *In re WeWork Inc.*, No, 23-19865 (JKS) (Bankr. D.N.J. May 31, 2024) (same); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023) (same); *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. Sept. 14, 2023) (same); *In re Nat'l Realty Inv. Advisors, LLC*, No. 22- 14539 (JKS) (Bankr. D.N.J. Aug. 10, 2023) (providing that the Bankruptcy Court maintained exclusive jurisdiction to adjudicate matters related to the chapter 11 case on a post-effective date basis); *In re Princeton Alt. Income Fund, LP*, No. 18-14603 (MBK) (Bankr. D.N.J. Mar. 13, 2020) (explicitly applying the Barton Doctrine to post-confirmation suits); *In re Cineworld Grp. plc*, No. 22-90168 (MI) (Bankr. S.D. Tex. Jun. 28, 2023) (approving a similar gatekeeping provision); *In re Avaya Inc.*, No. 23-90088 (DRJ) (Bankr S.D. Tex. Mar. 21, 2023) (same).

injunction is void." *In re Mariner Post-Acute Network, Inc.*, 303 B.R. 42, 47 (Bankr. D. Del. 2003).

The Gatekeeping Provision approved by the Bankruptcy Court in connection with the 2025 Plan is intended to prevent precisely what is occurring here: the litigation of claims in non-bankruptcy forums before the Bankruptcy Court has had an opportunity to determine whether those claims were released, discharged, exculpated, or otherwise affected by the Plan and Confirmation Order. The Gatekeeping Provision further protects Released Parties from being required to incur the expense and burden of defending claims that the Bankruptcy Court may ultimately determine are barred by the Plan or that otherwise fail as a matter of law. That concern is particularly acute here. Appellant's Complaint appears to allege violations of the First, Eighth, and Fourteenth Amendments against an individual Rite Aid employee acting in a private capacity. Such claims are facially deficient and should have been dismissed, as constitutional claims generally require governmental action, and the conduct alleged must be fairly attributable to the State. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (explaining that "the party charged with the deprivation must be a person who may fairly be said to be a state actor" and that conduct causing the alleged constitutional deprivation must be "fairly attributable to the State"). Accordingly, whether Appellant has asserted a

colorable claim is a question that should first be presented to the Bankruptcy Court pursuant to the Gatekeeping Provision

Moreover, even if Appellant were permitted by the Bankruptcy Court to proceed with his claims and ultimately prevail on the merits, any resulting claim against Rite Aid would constitute a General Unsecured Claim under the 2025 Plan. General Unsecured Claims under the 2025 Plan are expressly "discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims." 2025 Plan Art. III.B.10. Because Appellant's allegations are inextricably intertwined with Rite Aid's business operations and the bankruptcy proceedings, thereby requiring Rite Aid to incur the burden and expense of defending the action, the Gatekeeping Provision is not merely relevant, but controlling. Accordingly, this Appeal should be dismissed, or alternatively stayed, unless and until Appellant obtains a determination from the Bankruptcy Court authorizing him to proceed.

## Conclusion

Appellant's Complaint and Appeal should be dismissed because Appellant has not obtained the authorization required by the 2025 Plan and 2025 Confirmation Order to proceed against a Released Party. Any further prosecution of Appellant's claims must first be presented to, and authorized by, the United States Bankruptcy Court for the District of New Jersey.

Accordingly, Rite Aid respectfully requests that this Court enter an Order: (i) denying Appellant's motion; (ii) dismissing the Appeal; and (iii) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Rite Aid Corporation

By: ______________________________
Counsel

Brian A. Cafritz, VSB# 34366
KALBAUGH PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300
(804) 320-6312 (fax)
Brian.Cafritz@kpmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Supplemental Opposition to Appellants Motion to Continue was served via electronic mail on this 16th day of September 16, 2026, to:

Van Prince
676 E. Princess Anne Rd.
Norfolk, VA 23510
pvan83089@gmail.com
*Plaintiff, pro se*



70913/0001-54069183v2